[No. C034619. Third Dist. Sept. 14, 2001.]

LESTER A. SIMMONS et al., Cross-complainants and Appellants, v. ALLSTATE INSURANCE COMPANY, Cross-defendant and Respondent.

**[Opinion certified for partial publication.*]**

*It is ordered that the opinion be published with the exception of parts I, II, III, V, and VI, pursuant to California Rules of Court, rules 976(b) and 976.1.

**COUNSEL**

Law Offices of Wanland & Bernstein, Donald M. Wanland, Jr., Richard P. Bernstein and Daniel Boone for Cross-complainants and Appellants.

Manning & Marder, Kass, Ellrod, Ramirez, Dennis B. Kass, David J. Wilson and Julie Fleming for Cross-defendant and Respondent.

**OPINION**

**CALLAHAN, J.**—California's anti-SLAPP statute (Code Civ. Proc., § 425.16; all further unspecified statutory references are to this code) allows dismissal, at an early stage, of a lawsuit designed primarily to chill the

exercise of First Amendment rights.[1] It permits a special motion to strike any cause of action designed to deter acts in furtherance of a person's right of petition or free speech. (§ 425.16, subd. (b).)

In this case, Lester A. Simmons, Ute Simmons, and related business entities appeal from an order striking, as a SLAPP suit, a defamation-based cross-complaint they filed against Allstate Insurance Company (Allstate) in response to an unfair business practice suit by Allstate charging the Simmons defendants with bilking insurance companies and overtreating patients.

Seeking reversal, the Simmons defendants contend that Allstate never carried its burden of showing that the cross-complaint fell within the statutory definition; alternatively, if some of the allegations did fall into the SLAPP category, they claim the trial court erred in refusing to grant leave to amend the pleading to eliminate the offending verbiage.

We conclude the trial court correctly struck the cross-complaint and did not err in refusing leave to amend. We shall affirm and award Allstate attorney fees in connection with defending the appeal.

PROCEDURAL OVERVIEW

*Allstate's Complaint*

In June 1999, Allstate filed a complaint against Lester A. Simmons, individually and doing business as Lester A. Simmons, D.C., various other Simmons-related business entities, and Robert A. McAuley, M.D.[2] The opening paragraph aptly conveys the tenor of the complaint: "This action arises out of an illegal scheme to defraud Allstate, its insureds, as well as other insurers and their insureds, through the creation, submission and prosecution of fraudulent, inflated, and exaggerated medical bills and medical records, the performance of unnecessary medical tests and treatments, illegal ownership of chiropractic and medical corporations, the utilization of unlicensed physical therapists to treat patients, and related claims for insurance benefits."

Allstate averred that defendants engaged in three main forms of illegal conduct: (1) intentional and consistent abuse of the American Medical

[1] "SLAPP is an acronym for Strategic Lawsuit Against Public Participation. SLAPP litigation, generally, is litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants." (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 858 [44 Cal.Rptr.2d 46] (*Lafayette Morehouse*).)

[2] Dr. McAuley, a physiatrist, is a principal shareholder along with Simmons in an entity known as RX Spinal Care, an entity which operates clinics under a variety of different names at a number of locations throughout the Sacramento area.

Association physicians' current procedural terminology codes by fraudulently increasing the amounts billed to Allstate and exaggerating the claims of patients; (2) operating chiropractic and medical clinics without valid licenses; and (3) employing unlicensed physical therapists.

Pursuant to the Unfair Practices Act (Bus. & Prof. Code, § 17200 et seq.), Allstate sought injunctive relief against defendants' allegedly deceptive and fraudulent practices, disgorgement of unlawful profits obtained by reason of their conduct, and payment of attorney fees and costs pursuant to section 1021.5.

### Simmons's Cross-complaint

Lester A. Simmons, Ute Simmons, and their various business entities, including Owlstone Asset Management, Inc., which operates seven clinics in the Sacramento area (collectively Simmons), responded with a cross-complaint against Allstate and "Roes 1 through 500," who were alleged to be partners and other joint venturers of Allstate.

Contending that new laws have driven up Allstate's costs, the cross-complaint charges Allstate and other insurance companies with conspiring to force chiropractors such as Simmons out of business in retaliation for their refusal to accept managed care treatment and billing practices. Allstate has done this through maliciously filing frivolous lawsuits, waging a "media war . . . through the use of slanderous, defamatory and libelous statements," making defamatory statements outside litigation, and wrongfully refusing to pay for authorized care and legitimate claims.

Based on this allegedly wrongful conduct, the cross-complaint posits nine tort causes of action, cast under a variety of legal theories. Notable among them is the slander cause of action, which alleges Allstate levied false charges that Simmons overtreats patients, uses a sham medical director, engages in tax and mail fraud, and is fleeing the country to avoid prosecution.

### The Motion to Strike

Allstate brought a motion to strike the cross-complaint under section 425.16, on the ground that all of Simmons's causes of action arose out of statements in connection with issues under consideration by a judicial or executive body, as well as issues of public interest.

In support of the motion, Allstate asked the court to take judicial notice of certain documents, two of which reflect formal disciplinary proceedings

before the state Board of Chiropractic Examiners (the Board): a Board order denying Simmons's motion to dismiss an accusation filed by the state Department of Justice and a "Proposed Decision" which included factual findings, rendered by Administrative Law Judge Jaime Rene Roman.

The Board order denying the motion to dismiss found that Simmons, while holding an inactive license, improperly engaged in business activities requiring an active license, improperly advertised the rendering of physical therapy services, which is expressly prohibited by his license, inappropriately advertised his services and improperly solicited patients under the guise of cost-free participation in a scientific research study about pain. The proposed decision found that Simmons had engaged in numerous violations of the Chiropractic Act, including (1) performing examinations with no regard for medical necessity; (2) referring patients, regardless of their medical condition, to Dr. McAuley, who found justification for chiropractic care that was not medically necessary or justified; (3) "inappropriately and fraudulently" billing for levels of service or services not rendered to patients; (4) routinely and fraudulently billing for unperformed X-rays and submitting X-ray reports that were either medically unjustified or not rendered; and (5) tying the rendering of services to employee bonuses, thereby impairing the application of unfettered, conflict-free chiropractic judgment. Characterizing Simmons as "a businessman, not a professional, focused primarily on profit, statistics, productivity, formal legalities, and the receipt of account receivables," Judge Roman's decision orders revocation of Simmons's license to practice chiropractic and reimbursement to the Board of $88,000 in prosecution and enforcement costs.

Allstate also asked the court to take judicial notice of other actions filed by various insurance companies against Simmons for unfair business practices. Simmons opposed the motion to strike and objected to the request for judicial notice.

At the hearing on the motion Simmons's counsel, faced with an adverse tentative ruling, asked the court to grant Simmons leave to amend the cross-complaint. The court issued an order striking Simmons's cross-complaint and denied leave to amend.

APPEAL

I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1068.

## IV

### *Leave to Amend*

■ Simmons's other major argument is that the court should have granted his oral request for leave to amend the cross-complaint so as to remove any allegations that might be "objectionable" under the anti-SLAPP statute. He reasons that SLAPP motions are analogous to demurrers and motions to strike, in which it is recognized that leave to amend should be liberally granted.

Simmons's premise is faulty. ■ Unlike demurrers or motions to strike, which are designed to eliminate sham or facially meritless allegations, at the *pleading* stage a SLAPP motion, like a summary judgment motion, *pierces* the pleadings and requires an evidentiary showing. As we observed in *Kyle v. Carmon* (1999) 71 Cal.App.4th 901 [84 Cal.Rptr.2d 303], the test applied to a SLAPP motion is similar to that of a motion for summary judgment, nonsuit, or directed verdict. (71 Cal.App.4th at pp. 907-908.) Evidence is considered, but not weighed. If the initial evidentiary burden is met by the moving party, the burden shifts to the party opposing the motion to avoid dismissal of the action. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 646 [49 Cal.Rptr.2d 620] (*Scientology*).)

■ As Simmons concedes, the anti-SLAPP statute makes no provision for amending the complaint once the court finds the requisite connection to First Amendment speech. And, for the following reasons, we reject the notion that such a right should be implied.

In enacting the anti-SLAPP statute, the Legislature set up a mechanism through which complaints that arise from the exercise of free speech rights "can be evaluated at an early stage of the litigation process" and resolved expeditiously. (*Lafayette Morehouse, supra*, 37 Cal.App.4th at p. 865.) Section 425.16 is just one of several California statutes that provide "a procedure for exposing and dismissing certain causes of action lacking merit." (*Lafayette Morehouse, supra*, at p. 866.)

Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend.

By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. (See *Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 741 [36 Cal.Rptr.2d 687].) Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources. (*Scientology, supra,* 42 Cal.App.4th at p. 645.) This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446].)

We conclude the omission of any provision in section 425.16 for leave to amend a SLAPP complaint was not the product of inadvertence or oversight. Accordingly, we refuse Simmons's invitation to read into section 425.16 an implied right of leave to amend. On the contrary, we believe that granting leave to amend the complaint after the court finds the defendant had established its prima facie case would be jamming a procedural square peg into a statutory round hole.

### V, VI*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The order appealed from is affirmed. The cause is remanded to the trial court to award reasonable attorney fees to Allstate for this appeal. Allstate shall recover costs.

Nicholson, Acting P. J., and Raye, J., concurred.

---

*See footnote, *ante,* page 1068.