[No. G039206. Fourth Dist., Div. Three. Feb. 26, 2009.]

KIMOANH NGUYEN-LAM, Plaintiff and Respondent, v.
SINH CUONG CAO, Defendant and Appellant.

---

COUNSEL

John L. Dodd & Associates, John L. Dodd; Bucher & Palmer and Mark W. Bucher for Defendant and Appellant.

Donna Bader; Lents & Foley and Katrina Anne Foley for Plaintiff and Respondent.

## OPINION

**ARONSON, J.**—Defendant Sinh Cuong Cao appeals from the trial court's order following a hearing on his strike motion under the anti-SLAPP statute, Code of Civil Procedure section 425.16 (all further unlabeled section references are to this code).[1] Concluding the evidence submitted by the parties for the hearing demonstrated a probability plaintiff Kimoanh Nguyen-Lam would prevail in establishing defendant slandered her with actual malice, the trial court authorized plaintiff to amend her complaint to plead actual malice. Plaintiff claimed that but for defendant's false accusation in a telephone conversation with Westminster School District (WSD) board members that she was a "Communist," and repeated republications of the false statement, the WSD school board (Board) would not have rescinded her appointment as the nation's first Vietnamese superintendent of a public school district.

Contending the amendment order amounted to a denial of his strike motion, defendant argues the trial court erred because (1) plaintiff failed to allege actual malice in her original complaint and the trial court erroneously permitted amendment; (2) the "Communist" epithet no longer constitutes slander per se; (3) given the absence of slander per se, plaintiff failed to demonstrate defendant's comment damaged her or injured her reputation; and (4) defendant's description of plaintiff as a "Communist" was not a provably false assertion of fact but rather "protected rhetorical hyperbole or loose language." (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 849 [111 Cal.Rptr.2d 582] (*Lam*).)

Defendant also raises for the first time on appeal arguments not presented to the trial court: (1) his statements fell within the *Noerr-Pennington* (*Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523]; *Mine Workers v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626, 85 S.Ct. 1585]) doctrine applicable when petitioning one's elected representatives, and (2) his statements were shielded by the absolute privilege afforded petitioning activity under Civil Code section 47, subdivision (b), for communications concerning legislative proceedings. Finally, while defendant's motion to strike did not challenge plaintiff's causes of action for intentional interference with contractual relations, or intentional or negligent interference with prospective economic advantage, defendant asserts the trial court erroneously denied his strike motion as to those claims because he later attacked them in a supplemental reply.

In the published portion of this opinion, we conclude the trial court properly authorized plaintiff to amend her complaint to plead actual malice as

---

[1] "A plethora of appellate litigation has made the SLAPP acronym a household word—at least in legal households. SLAPP stands for strategic lawsuit against public participation . . . ." (*Paterno v. Superior Court* (2008) 163 Cal.App.4th 1342, 1345, fn. 1 [78 Cal.Rptr.3d 244] (*Paterno*).)

reflected in the parties' evidentiary submissions for the strike motion. Where the evidence submitted for the motion enables the plaintiff to demonstrate the requisite probability of prevailing on the merits of her defamation claim, the policy concerns against amendment in the anti-SLAPP context do not apply because the plaintiff's suit—shown to be likely meritorious—is not a strategic lawsuit against public participation. In the unpublished portion of the opinion, we explain defendant's other contentions are without merit or forfeited, and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

After applying for the position of Westminster's superintendent of public schools, plaintiff advanced through three rounds of interviews. The Board members conducted the first round on May 16, 2006, the members of the teachers' union interviewed candidates the next week, and the Board members conducted a final round a week later. Plaintiff competed with 15 other applicants.

WSD held focus group interviews to develop a profile of the "ideal superintendent by interviewing the Board, the district staff, the teacher[s'] union, the city council members in the district, the police departments, and the parents and community members."

Board President Blossie Marquez opined that "[b]ased on my review of Dr. Nguyen-Lam's experience, credentials, and cultural background, she was qualified for the WSD [s]uperintendent position."

On May 23, 2006, the Board voted four to one in favor of plaintiff as its next superintendent. Boardmember Jo-Ann Purcell dissented. Marquez called plaintiff to congratulate her that evening and gave her the official news. The interim superintendent, Dr. Mel Lopez, also called to congratulate her.

WSD issued a press release announcing plaintiff's superintendent appointment. Local television stations and major newspapers picked up the story because plaintiff would become the first Vietnamese person hired in America as a superintendent of a public school system. She would begin her three-year term on July 1, 2006, a little more than a month later. The next day, plaintiff resigned her administrative position at California State University, Long Beach.

On May 27, 2006, claiming she had been "investigating" plaintiff, Boardmember Judy Ahrens called Marquez at her home. The call was placed

from defendant's business. Announcing, "I know someone who knows all about Dr. Nguyen-Lam," Ahrens placed defendant on the line. According to Marquez, defendant "spoke to me and maliciously accused Dr. Nguyen-Lam of being a Communist, inexperienced, and unqualified for the position." Ahrens then advised Marquez, " 'You have to listen to this guy.' "

In his initial declaration submitted for the anti-SLAPP hearing, defendant admitted that at the time he made these statements, he never had met plaintiff, and only knew about her through media reports as a Garden Grove school board member and "community activist," as well as articles published in the newspaper. Defendant admitted he talked to Ahrens and Marquez about the decision to hire plaintiff; however, defendant insisted he merely gave his "opinion" of plaintiff.

In his second declaration, filed with his reply in the anti-SLAPP proceeding, defendant denied stating plaintiff was a Communist, inexperienced, or unqualified. On the contrary, he claimed, "[my] only complaint about Dr. Nguyen-Lam is that, according to my understanding, her political views are far less conservative than my own." Defendant also insisted he was merely sharing his opinion and never encouraged any board member to change his or her vote.

Plaintiff explained in her declaration that calling someone a "Communist" in Westminster's "Little Saigon" Vietnamese community was "extremely harmful to [her] reputation." While the statements were not made to Vietnamese individuals, they were made to Board members necessarily attuned by demographics to the concerns of Vietnamese-American voters.

Less than a week after plaintiff's appointment, the Board met and voted three to two to terminate her as superintendent. Boardmembers Ahrens and Jim Reed changed their votes while Purcell again voted against plaintiff. Marquez and Sergio Contreras continued to support plaintiff.

Plaintiff subsequently filed a lawsuit against the school district and others, including defendant. Plaintiff named defendant in the following causes of action: defamation (seventh cause of action), intentional interference with contractual relations (ninth cause of action), intentional interference with prospective economic advantage (10th cause of action), and negligent interference with prospective economic advantage (11th cause of action).

Defendant filed an answer to the complaint, listing numerous affirmative defenses; however, he did not assert any privileges. A few days later, defendant filed his anti-SLAPP motion, contending any statements he made were pursuant to his rights to free speech and to petition the government. He

asserted plaintiff was a public official and her appointment as superintendent was a matter of public interest. Defendant explained he formed an "opinion" about plaintiff, which he shared with others because of his interest in Vietnamese-American community affairs and local politics. He argued plaintiff's suit punished him for expressing his political opinion.

Other than listing the causes of action in his notice of motion, defendant did not further address why the trial court should strike the ninth, 10th, or 11th causes of action. Plaintiff's opposition argued the anti-SLAPP statute did not apply because defendant did not make his comments in a public forum on a pending matter. Plaintiff explained she was past the hiring phase and the matter was no longer under review. Moreover, defendant made his statements privately, either by telephone or at his office, in a manner she had no opportunity to dispute before the Board acted on them. Plaintiff denied she was ever a Communist.

In his reply, defendant claimed any statements he may have made simply illustrated his political differences with plaintiff and amounted to an expression of his opinion, not an assertion of fact. In his second declaration, which he attached to his reply, defendant denied stating plaintiff was a "Communist," but opined her political beliefs were more liberal than his.

Seven days later, defendant filed a short "Supplemental Reply," in which he attempted to address the ninth, 10th, and 11th causes of action. On August 1, 2007, the trial court heard the motion, noting defendant failed to address the ninth, 10th, and 11th causes of action in his moving papers, and found defendant's attempt to do so in his reply improper.

Addressing the existence of "actual malice," the trial court stated: "But isn't the proof in your client's own declaration where he says he doesn't even know this lady? And nowhere does he say, 'I learned she is a Communist from this source or that source or from her own words.' If you put both of those together, what do you have? You have no place to go for his belief that she's a Communist."

The next day, the trial court asked for briefs from both parties as to whether plaintiff could amend her complaint to allege actual malice. Following further briefing, the court granted leave for plaintiff to amend her complaint and effectively denied defendant's anti-SLAPP motion. The trial court found the matter was one of public interest under the anti-SLAPP statute; however, plaintiff had established a probability of prevailing on her defamation claim. The trial court denied defendant's anti-SLAPP motion as to the ninth, 10th, and 11th causes of action because defendant failed to address them in his moving papers. The court found the complaint was deficient on

its face in alleging actual malice, but determined plaintiff had provided proof of actual malice and authorized plaintiff to amend the complaint accordingly. The court concluded plaintiff had demonstrated a probability of prevailing on her claim that defendant falsely and maliciously branded her a "Communist," uttered as a statement of fact "without a belief in its truth."

## II

## DISCUSSION

### A. *Governing Anti-SLAPP Principles*

"The anti-SLAPP statute arose from the Legislature's recognition that SLAPP suit plaintiffs are not seeking to succeed on the merits, but to use the legal system to chill the defendant's first amendment right of free speech." (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 522 [44 Cal.Rptr.3d 517] (*Integrated Healthcare*).) "To prevail on an anti-SLAPP motion, the movant must first make ' "a threshold showing that the challenged cause of action" arises from an act in furtherance of the right of petition or free speech in connection with a public issue.' [Citation.] Once the movant meets this burden, the plaintiff must demonstrate ' "a probability of prevailing on the claim." ' [Citation.] If the plaintiff cannot meet this burden, the trial court must strike the cause of action. [Citation.]" (*Ibid.*)

The trial court concluded defendant satisfied the first prong because plaintiff's appointment as superintendent remained "an issue of public interest that moving party was free to comment on." Defendant challenges the trial court's analysis on the second prong. We review the trial court's order de novo. (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 79 [55 Cal.Rptr.3d 600] (*Christian Research*).)

Defendant contends the trial court erred in concluding plaintiff demonstrated a probability of prevailing on the merits of her slander claim. "To establish a probability of prevailing, the plaintiff ' "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.] In doing so, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant. [Citation.] Although 'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.] Moreover, the plaintiff cannot rely on the allegations of the complaint, but

must produce evidence that would be admissible at trial. [Citation.]" (*Integrated Healthcare, supra*, 140 Cal.App.4th at p. 527.)

## B. *Slander*

■ Slander is a species of defamation. "Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander. [Citation.] . . . [Citations.] A false and unprivileged *oral* communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242 [7 Cal.Rptr.3d 576, 80 P.3d 676].) In addition to false statements that cause actual damage (Civ. Code, § 46, subd. 5), the Legislature has specified that slander includes a false statement that: "1. Charges any person with crime, or with having been indicted, convicted, or punished for crime; [¶] 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease; [¶] 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; [or] [¶] 4. Imputes to him impotence or a want of chastity . . . ."[2] (Civ. Code, § 46, subds. 1–4.)

■ Defendant asserts plaintiff, a public figure, inadequately alleged slander in her complaint. Plaintiff concedes that as Westminster's new superintendent, albeit briefly, she was a public figure. We agree. (See *Ghafur v. Bernstein* (2005) 131 Cal.App.4th 1230, 1238–1239 [32 Cal.Rptr.3d 626] [" 'strong public interest in ensuring open discussion' " of superintendent's "fitness for the position" commands "universal agreement" that such persons are public figures]; cf. also *Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451 [83 Cal.Rptr.2d 443] [candidates for public office are public figures].) As such, plaintiff shouldered the burden of proving not only the falsity of the challenged statement, but also that defendant acted with "actual malice." (*New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 280 [11 L.Ed.2d 686, 84 S.Ct. 710] (*New York Times*).)

■ To show actual malice, a public figure must demonstrate the defendant uttered the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times, supra*, 376 U.S. at pp. 279–280; see *Bose Corp. v. Consumers Union of U.S., Inc.* (1984) 466 U.S. 485, 511 [80 L.Ed.2d 502, 104 S.Ct. 1949] [defendant must have

---

[2] Because a plaintiff need not show actual damages under Civil Code section 46, subdivisions 1 through 4, these varieties of slander are known as slander per se.

known statement was false or subjectively entertained serious doubt about its truth].) A public figure plaintiff must prove actual malice by clear and convincing evidence. (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 342 [41 L.Ed.2d 789, 94 S.Ct. 2997].)

Plaintiff's original complaint unequivocally asserted defendant's statement that she was a "Communist" was "false." But whether she alleged defendant knew the statement was false or uttered it with reckless disregard for the truth is a closer call. According to defendant, plaintiff failed to allege he uttered his statements with the actual malice necessary to constitute slander of a public figure.

## C. *Actual Malice*

■ Plaintiff's complaint alleged defendant repeatedly called her a Communist "for malicious purposes," "to get her fired [and] justify her wrongful termination . . . ." Quoting Civil Code section 45, the complaint further alleged defendant made the statements intending to subject her to "contempt, ridicule, hatred, [and] obloquy, . . . or [to] cause her to be shunned and avoided." Defendant points out that plaintiff's quotation derives from the libel statute (Civ. Code, § 45), not the slander code section (Civ. Code, § 46). But this is a distinction without a difference if plaintiff conveyed that defendant acted with anger and hostility toward her, which may support an inference of actual malice. (See *Christian Research, supra,* 148 Cal.App.4th at pp. 84–85 [" 'anger and hostility toward the plaintiff . . . may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication' "].)

Plaintiff alleged that defendant made his statements "with intent, malice, fraud, or oppression, and in reckless disregard of [p]laintiff's rights." True, one court has held similar language—that the defendant acted " 'maliciously and oppressively, and in conscious disregard of [plaintiff's] rights' "— insufficient "to state a cause of action in a case where actual malice . . . is required." (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1018 [26 Cal.Rptr.3d 350], relying on *Noonan v. Rousselot* (1966) 239 Cal.App.2d 447, 453, fn. 5, 452–454 [48 Cal.Rptr. 817] [upholding demurrer aimed at similar language after plaintiff failed twice to amend complaint to plead actual malice].)

■ But we need not resolve whether plaintiff adequately alleged actual malice in her original complaint because facts probative of actual malice emerged through the evidence the parties submitted for the hearing on the strike motion. Plaintiff's evidence suggested defendant held himself out as having inside knowledge about plaintiff, i.e., Ahrens put him on the line with Marquez because he " 'knows all about Dr. Nguyen-Lam.' " But defendant

admitted in his first declaration he had never met plaintiff and knew of her only through media reports. Nothing in those reports hinted she was a Communist. Consequently, the trial court could reasonably conclude that because defendant had no basis for his claim plaintiff was a Communist, a jury could reasonably determine he lied in leveling the charge against her and, moreover, could infer malice from the lie.

As the trial court put it at the hearing: "[I]sn't the proof in your client's own declaration where he says he doesn't even know this lady? And nowhere does he say, 'I learned she is a Communist from this source or that source or from her own words.' If you put both of those together, what do you have? You have no place to go for his belief that she's a Communist." As the trial court correctly understood, "malice may be inferred where, for example, 'a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.' [Citation.]" (*Christian Research, supra*, 148 Cal.App.4th at p. 85.)

"Similarly, an inference of malice may be drawn 'when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation[,] . . . [or] where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports. . . .' " (*Christian Research, supra*, 148 Cal.App.4th at p. 85.) On this score, plaintiff's opposition suggested defendant, a fellow Vietnamese immigrant, should have known that since the articles about her disclosed she fled Vietnam to take refuge in the United States in 1975, it was improbable she would be a Communist, yet he hurled the epithet anyway, despite "the harm that would result f[rom] such accusations" in Westminster. As plaintiff points out, while defendant did not make his statements to Vietnamese individuals, "they were certainly made to Board members who had to answer to a heavily Vietnamese population." In sum, the trial court did not err in concluding plaintiff demonstrated the requisite probability a jury would find defendant's baseless accusations and contradictory explanations constituted clear and convincing evidence he harbored actual malice.

## D. *Amendment*

Defendant contests the trial court's order authorizing plaintiff to amend her complaint with the foregoing facts presented at the anti-SLAPP hearing. The trial court couched its ruling as an order granting defendant's motion to strike, but with leave for plaintiff to amend her complaint to cure any deficiency concerning actual malice. Pending this appeal, plaintiff has not filed her amended complaint, nor did she appeal the trial court's order granting the strike motion. Nevertheless, we conclude the trial court's ruling is properly before us. A plaintiff authorized to amend would have—as

exemplified here—no incentive to appeal an order granting the strike motion. But authorizing an amendment under these circumstances is tantamount to denying the strike motion, and we therefore reach the propriety of the ruling based on defendant's challenge. (§ 425.16, subd. (i) [orders granting or denying strike motion are appealable].)

Defendant relies on *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068 [112 Cal.Rptr.2d 397] (*Simmons*) for the proposition that a complaint may not be amended after a motion to strike is filed, but we find *Simmons* inapposite. In *Simmons*, Allstate sued a chiropractor and his related business entities for unfair business practices based on an insurance scam involving fraudulent medical bills, unnecessary treatments, and other misdeeds. When Simmons cross-complained alleging defamation, Allstate brought an anti-SLAPP motion to strike showing the allegedly defamatory statements "arose out of statements in connection with issues under consideration by a judicial or executive body, as well as issues of public interest." (*Simmons*, at p. 1071.) Specifically, the statements were related to or made at an ongoing state disciplinary action against Simmons. At the hearing on the motion, Simmons sought leave to amend the cross-complaint to pare allegations bringing it within the scope of the anti-SLAPP statute. (*Id.* at p. 1073.) Simmons argued leave to amend should be liberally granted, comparing the strike process to a demurrer.

The trial court denied leave to amend, which the appellate court upheld on grounds that an anti-SLAPP motion is more like a summary judgment motion than a demurrer because of the evidentiary showing required and the shifting burdens. (*Simmons, supra*, 92 Cal.App.4th at p. 1073; accord, *Lam, supra*, 91 Cal.App.4th at p. 843 [noting strike motion is "akin to a summary judgment motion"].) Observing the anti-SLAPP statute made no express provision for amendments, the *Simmons* court concluded permitting an amendment to thwart the defendant's initial prima facie showing of protected activity would undermine section 425.16's "quick dismissal remedy." (*Simmons*, at p. 1073.) The court explained: "Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. . . . [¶] By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in [the] goal of delay and distraction and running up the costs of his opponent." (*Id.* at pp. 1073–1074.)

*Simmons* is inapposite. Unlike the plaintiff in *Simmons*, in seeking amendment here plaintiff did not attempt to void defendant's showing on the first prong of the anti-SLAPP inquiry. Specifically, plaintiff's amendment had nothing to do with defendant's assertion his statements were made in

connection with his right of petition or free speech. Rather, assuming that showing had been made, and in conjunction with her burden on the second prong to show a probability of prevailing on the merits, plaintiff sought to amend the complaint to plead specifically that defendant harbored the requisite actual malice as shown by the evidence presented for the hearing on the strike motion.

As *Simmons* noted, the anti-SLAPP statute is silent on the question of amendment. Our purpose in construing section 425.16 is to discern and effectuate the Legislature's intent. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Consequently, we look to " 'the statute as a whole, which includes the particular directives.' " (*Ibid.*) Those directives include the requirement that the parties may not rely merely on pleadings or argument in supporting or opposing the motion, but must present facts in the form of affidavits. (§ 425.16, subd. (b)(2); *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 211–212 [12 Cal.Rptr.3d 786] [plaintiff must make prima facie showing of facts establishing probability plaintiff will prevail].) Additionally, "although discovery is stayed until the notice of entry of the order ruling on the motion, discovery may be conducted if good cause is shown, and such discovery is limited to the issues raised in the special motion to strike." (*Slauson Partnership v. Ochoa* (2003) 112 Cal.App.4th 1005, 1021 [5 Cal.Rptr.3d 668] (*Slauson*); see *Paterno, supra,* 163 Cal.App.4th at pp. 1345–1346; § 425.16, subd. (g).) Accordingly, the *Slauson* court concluded "nothing in the statute or case law suggests that the factual analysis for ruling on the motion must be frozen in time on the date the complaint is filed." (*Slauson,* at p. 1021.) We agree.

The purpose of section 425.16 is to unmask SLAPP actions " 'masquerad[ing] as ordinary lawsuits.' " (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 927 [116 Cal.Rptr.2d 187].) As *Simmons* observed, "In enacting the anti-SLAPP statute, the Legislature set up a mechanism through which complaints that arise from the exercise of free speech rights 'can be evaluated at an early stage of the litigation process' and resolved expeditiously. [Citation.] Section 425.16 is just one of several California statutes that provide 'a procedure for exposing and dismissing certain causes of action lacking merit.' [Citation.]" (*Simmons, supra,* 92 Cal.App.4th at p. 1073.) By definition, however, when the plaintiff demonstrates a probability of prevailing on the merits, his or her complaint is not a SLAPP. With nothing to unmask, the policy concerns implicated by the anti-SLAPP statute dissipate, and the action proceeds as an ordinary lawsuit.

True, a plaintiff may not avoid or frustrate a hearing on the anti-SLAPP motion by filing an amended complaint (*Sylmar Air Conditioning v. Pueblo*

*Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049 [18 Cal.Rptr.3d 882]) but where, as here, the evidence prompting amendment is found in the declarations already submitted for the hearing, there is no risk the purpose of the strike procedure will be thwarted with delay, distraction, or increased costs. (Cf. *ARP Pharmacy Services, Inc. v. Gallagher Bassett Services, Inc.* (2006) 138 Cal.App.4th 1307, 1323 [42 Cal.Rptr.3d 256] [plaintiff cannot amend pleading to avoid pending anti-SLAPP motion]; *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 772 [131 Cal.Rptr.2d 201] [plaintiff cannot use "eleventh-hour amendment" to plead around anti-SLAPP motion].)

*Simmons* rightly foresaw a "procedural quagmire" in allowing amendment to defeat the movant's showing on the first prong of the anti-SLAPP statute. (*Simmons, supra,* 92 Cal.App.4th at p. 1074.) Amendment in that circumstance would necessitate "a fresh motion to strike," triggering "inevitably another request for leave to amend," and thereby abetting the SLAPP plaintiff "in his goal of delay and distraction and running up the costs of his opponent. [Citation.] Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources. [Citation.] This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits. [Citation.]" (*Simmons, supra,* 92 Cal.App.4th at pp. 1073–1074.) But the concerns expressed in *Simmons* are not implicated where the plaintiff's request for amendment to meet her burden on the second prong is founded upon timely submitted facts already before the court. In such cases, there is no need for a "fresh motion to strike" (*Simmons, supra,* 92 Cal.App.4th at p. 1073); rather, the trial court need only rule on the motion and facts already under consideration.

To the extent *Simmons* suggests section 425.16 erects an absolute bar to amendment, we disagree and find *Slauson*'s analysis more persuasive. In *Slauson*, a pastor, Ochoa, sought to shut down an adult entertainment strip club through protests by his congregation and other persons outside the business, located in a small shopping center. (*Slauson, supra,* 112 Cal.App.4th at p. 1009.) The club and its landlord filed suit to bar the protesters from the shopping center, and Ochoa responded with an anti-SLAPP motion to strike. Several months before the hearing on the motion, the parties stipulated to a temporary injunction authorizing the protestors to use a private sidewalk near the club, but limiting the number of protesters and confining their activity to " 'normal polite protest conduct' " without bullhorns, shouting or sitting, and no physical contact with the club's employees or patrons. (*Id.* at pp. 1014–1015.) The injunction did not restrict protestors' activities on public sidewalks farther away from the club.

Seeking to modify the injunction, the plaintiffs submitted evidence showing the protestors violated the injunction by marching within eight feet of

the club, gathering in the parking lot, congregating in numbers beyond the stipulated agreement, yelling and blowing loud whistles, continuing the protest beyond midnight, and engaging in harassing conduct, including placing video cameras on the private sidewalk with signs stating, " 'You are being videotaped, it can be used against you in a court of law.' " (*Slauson, supra*, 112 Cal.App.4th at p. 1015.)

The trial court heard the motion to strike before reaching the plaintiffs' request to modify the injunction but, in denying the motion, relied on the plaintiffs' evidence concerning violations of the injunction. On appeal from the denial of his motion, Ochoa argued consideration of the protestors' postcomplaint activities amounted to amendment of the complaint prohibited by *Simmons*. *Slauson* pointed out, however, that although the plaintiffs had not utilized discovery procedures to obtain evidence showing the protesters violated the injunction, the discovery provision in section 425.16, subdivision (g), demonstrated "further development of the factual record is contemplated by the anti-SLAPP statute, and not expressly prohibited by it . . . ." (*Slauson, supra*, 112 Cal.App.4th at p. 1021.) Accordingly, the *Slauson* court concluded "it was not error for the trial court to rely on evidence of events occurring subsequent to the filing of the complaint." (*Id.* at pp. 1021–1022.)

Here, plaintiff demonstrated a probability of prevailing at trial if she could amend her complaint. As the trial court observed, "Disallowing an amendment would permit defendant to gain an undeserved victory, undeserved because it was not what the Legislature intended when it enacted the anti-SLAPP statute." The Legislature declared its purpose in enacting section 425.16 was to protect "the *valid* exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a), italics added.) But false statements uttered with actual malice serve no public interest, and where the strike opponent has demonstrated the requisite probability of success in showing such malice, as here, her complaint falls outside the purpose of the anti-SLAPP statute—indeed, it is not a SLAPP suit at all. Simply put, the Legislature did not intend to shield statements shown to be malicious with an unwritten bar on amendment in the circumstances here. Consequently, the trial court did not err in permitting plaintiff to amend her complaint to plead actual malice in conformity with the proof presented at the hearing on the strike motion.

E.–G.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

---

*See footnote, *ante*, page 858.

## III

## DISPOSITION

The trial court's order granting plaintiff leave to amend and thereby effectively denying defendant's motion to strike is affirmed. Plaintiff is entitled to her costs on appeal.

Sills, P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied March 5, 2009, and appellant's petition for review by the Supreme Court was denied May 13, 2009, S171638.