Filed 8/10/23  Sanchez v. St. Joseph Hospital of Orange CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANA SANCHEZ, | |
| Plaintiff and Appellant, | G061322 |
| v. | (Super. Ct. No. 30-2020-01146216) |
| ST. JOSEPH HOSPITAL OF ORANGE et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed in part and reversed in part.

Polsinelli and Jonathon Cohn; Seals Phillips and Collin Seals for Defendants and Appellants.

The Arkin Law Firm and Sharon J. Arkin; Barta Law and Theresa J. Barta for Plaintiff and Appellant.

## INTRODUCTION

Every ruling a judge hands down makes *someone* unhappy. This is a case in which the judge's ruling made *everyone* unhappy. St. Joseph Hospital of Orange and Medical Staff of St. Joseph Hospital of Orange (collectively St. Joseph) appeal from the portion of an order denying their motion under the anti-SLAPP statute, Code of Civil Procedure section 425.16, to strike certain allegations of the first amended complaint of Ana Sanchez, M.D., and granting her leave to amend her complaint.[1] Sanchez, in turn, cross-appeals from the part of the order conditionally denying St. Joseph's anti-SLAPP motion.

The basis of Sanchez's case is a claim under Health and Safety Code section 1278.5 that St. Joseph retaliated against her for blowing the whistle on unsafe patient practices, eventually suspending her hospital privileges. She alleged three retaliatory acts: suspending her, requiring her to enter into a "behavioral contract," and flagging her patient files for peer review because of inadequate documentation.

The court denied St. Joseph's motion as to the first two acts, finding that the anti-SLAPP statute protected neither one. But it found the third act qualified as protected activity, and Sanchez had failed to make a prima facie showing of a probability of prevailing. Nevertheless, the court permitted Sanchez to amend the complaint to assert additional facts to establish a link between her whistleblowing and flagging her files – in other words, to allow her another chance to show a probability of prevailing on this retaliatory act.

Case law is clear that a plaintiff cannot amend a complaint to defeat an anti-SLAPP motion, and the case upon which the trial court relied is inapposite. As for the other rulings, the court correctly found that St. Joseph had failed to carry the burden to show that the anti-SLAPP statute protected either suspending Sanchez or requiring her to

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

enter into the contract. Case law establishes that the anti-SLAPP statute protects speech made during procedures such as peer review, but not the actions resulting from that speech. St. Joseph's motion seeks to extend anti-SLAPP protection to actions taken as a result of the speech associated with the peer review process.

Accordingly we return the matter to the trial court to enter an order (1) granting St. Joseph's anti-SLAPP motion to strike allegations of retaliation based on flagging Sanchez's patient files for peer review and (2) denying the rest of the motion.

## FACTS

Sanchez is a physician specializing in obstetrics and gynecology who had hospital privileges at St. Joseph Hospital of Orange. In her opposition to the anti-SLAPP motion, she declared she had complained to the California Department of Public Health about improper patient safety procedures at the hospital in July 2019, a complaint that was substantiated.[2] In retaliation, St. Joseph began flagging her patient files for additional peer review, in August 2019, purportedly for inadequate documentation, and she was made to sign a behavioral contract in October 2019, purportedly for "disruptive behavior" but actually in retaliation for her complaint to the Department of Public Health.

In March 2020, as the COVID pandemic began to escalate, Sanchez twice e-mailed the hospital's chief medical officer about hospital personnel not wearing masks and failing to keep six feet apart in the labor and delivery wards. On March 27, 2020, she videotaped a group of people in hospital scrubs congregating outside a restaurant a block from the hospital; she reproached them for not observing social distancing. She then posted the video on Facebook.

On March 31, 2020, St. Joseph summarily suspended Sanchez's hospital privileges. The letter informing her of her suspension stated it was based on her

---

[2]     St. Joseph requested judicial notice of the Department of Public Health's statement of deficiencies and plan of correction, dated March 4, 2019, a request Sanchez has opposed. The contents of the statement are unnecessary to the resolution of this appeal and are, in any event, not judicially noticeable, so we deny the request. (See *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

3

"attempt[ing], during a pandemic, to instill fear and a lack of confidence in the public by indicating that hospital personnel at [St. Joseph Hospital] and Children's Hospital of Orange County . . . were knowingly bringing the coronavirus back to hospital patients, including NICU patients; [¶] engag[ing] in flagrant abuse, intimidation, and harassment of hospital personnel; [¶] engag[ing] in actions that may have affected the well-being of hospital personnel by creating undue stress and anxiety during this unprecedented pandemic; [¶] engag[ing] in unprofessional conduct; and [¶] expos[ing] the Hospitals and hospital employees to liability."[3]  On April 14, St. Joseph notified Sanchez that the suspension would continue indefinitely and cited her rights of review.

Sanchez filed her complaint against St. Joseph on May 26, 2020.  The first amended complaint, the operative pleading, was filed on August 24, 2020.  It states one cause of action for retaliation under Health and Safety Code section 1278.5.  The allegation is that St. Joseph retaliated against her for reporting what she'd seen to the Department of Public Health, for complaining about unsafe or substandard hospital practices, and for making and posting the March 27 video.  The retaliation consisted of flagging her patient files for additional peer review, making her sign the behavioral contract, and suspending her.

St. Joseph moved to strike the complaint under the anti-SLAPP statute, section 425.16, on September 8, 2020.  As it happened, a case from this court was pending before the California Supreme Court, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*), which dealt with both the anti-SLAPP statute and Health and Safety Code section 1278.5.  The trial court postponed the hearing on St. Joseph's motion until the court issued its opinion in *Bonni*.

The trial court eventually held that two of the retaliatory acts – suspending Sanchez and the behavioral contract – did not constitute protected activity under *Bonni*.

---

[3]  The conduct cited in the letter seems to be mainly, if not entirely, related to the March 27 video.

4

The third act – flagging Sanchez's patient files for peer review – *was* protected activity but Sanchez had not made a prima facie showing of her probability of prevailing on this allegation. The court granted her leave to amend the first amended complaint to show probability of prevailing – "to establish a causal link between her complaints and the flagging of her files for additional peer review" – citing *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858 (*Nguyen*).

St. Joseph appealed from the denial of the anti-SLAPP motion on the suspension and behavioral contract allegations and from the trial court's permission to Sanchez to amend her complaint. They contend that the court erred in finding that the behavioral contract and the suspension were not protected activity under the anti-SLAPP statute and that amendment after failing to establish a probability of prevailing is not allowed. Sanchez has cross-appealed on the court's finding that flagging her patient files for peer review was protected activity but that she did not meet her burden to establish her probability of prevailing on that claim.

**DISCUSSION**

**I.        Anti-SLAPP Motion**

A SLAPP suit is a strategic lawsuit against public participation. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.) Section 425.16, the anti-SLAPP antidote, was enacted to curb "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) The statute provides a procedural remedy "'to expose and dismiss at an early stage such nonmeritorious actions which chill . . . "the valid exercise of the constitutional rights of freedom of speech . . . ."'" [Citation.]" (*Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1175.)

Both the trial court and this court analyze an anti-SLAPP motion using a two-prong test. The first prong is an inquiry into the nature of the challenged allegations: whether the statute protects the activity at issue. The moving defendant bears the burden

5

of establishing protected activity. If the defendant succeeds, then the second prong is an inquiry into the plaintiff's probability of prevailing, as to which the plaintiff bears the burden. At this stage, the plaintiff need produce only evidence supporting a prima facie case, that is, evidence that would allow him to prevail if it is believed. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

In *Bonni*, the Supreme Court discussed the intersection between the anti-SLAPP statute and Health and Safety Code section 1278.5, the anti-retaliation statute under which Sanchez is suing St. Joseph.[4] *Bonni* involved a physician whose hospital privileges in two hospitals were suspended, then terminated. (*Bonni, supra,* 11 Cal.5th at pp. 1005, 1007.) The physician claimed the hospitals had retaliated against him for complaining about malfunctioning medical equipment, which had caused patient complications. (*Id.* at pp. 1005, 1006.)

The court explained that the plaintiff had alleged 19 separate acts of retaliation. It analyzed each one for evidence of protected activity. (*Bonni, supra,* 11 Cal.5th at pp. 1009, 1016-1023.) The court stated this claim-by-claim analysis comported with the holding of *Baral v. Schnitt* (2016) 1 Cal.5th 376, which requires courts to evaluate each claim separately rather than using an all-or-nothing (or a "gravamen") approach. (*Bonni, supra,* 11 Cal.5th at pp. 1009-1010.)

After noting that speech in connection with hospital peer reviews falls under anti-SLAPP protections as speech in an official proceeding (*Bonni, supra,* 11 Cal. 5th at pp. 1004, 1013), the Supreme Court determined that eight out of the nineteen retaliatory acts Bonni had alleged were allegations of protected activity under the anti-

---

[4]     Health and Safety Code section 1278.5, subdivision (b), provides in pertinent part: "(1) A health facility shall not discriminate or retaliate, in any manner, against a patient, employee, member of the medical staff, or other health care worker of the health facility because that person has done either of the following: [¶] (A) Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity. [¶] (B) Has initiated, participated, or cooperated in an investigation or administrative proceeding related to the quality of care, services, or conditions at the facility that is carried out by an entity or agency responsible for accrediting or evaluating the facility or its medical staff, or governmental entity."

6

SLAPP statute. (*Id.* at p. 1026.) The court remanded the matter to this court to determine the second prong: whether Bonni had made a prima facie case for prevailing on each of these eight retaliatory acts. (*Id.* at pp. 1026-1027.) We determined he had not because the litigation privilege of Civil Code section 47, subdivision (b), protected each retaliatory action. (*Bonni v. St. Joseph Health System* (2022) 83 Cal.App.5th 288, 300 (*Bonni II*)).

For purposes of this appeal, the pertinent holding of *Bonni* is that "the anti-SLAPP statute protects speech and petitioning activity taken in connection with an official proceeding, but not necessarily the decisions made or actions taken as a result of those proceedings. Under the statute, 'a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.]" (*Bonni, supra,* 11 Cal.5th at p. 1014.)

A.          **Protected Activity**

In this case, Sanchez alleged three retaliatory acts. First, her patient files were flagged for additional peer review for inadequate documentation in August 2019. Second, she had to sign a behavioral contract in October 2019. Third, St. Joseph suspended her hospital privileges in March 2020.

As courts have held, and *Bonni* affirmed, statements made in connection with the peer review process qualify as protected activity. The statute, however, protects only the speech connected with the process. Courts that have extended this protection to the entire peer review process – including the actions taken as a result of the process – have broadened the protection too far. (*Bonni, supra,* 11 Cal.5th at p. 1014.)

7

*Bonni* referred frequently to *Park, supra,* which involved a similar fact pattern. (*Bonni, supra,* 11 Cal.5th at pp. 1009, 1012, 1019-1020, 1022.) In *Park*, the issue was granting tenure to a college professor. (*Park, supra,* 2 Cal.5th at p. 1068.) As the court held in *Park,* the statements made during the debate over whether to grant tenure were protected; the decision itself was not. (*Ibid.*)

Similarly, the anti-SLAPP statute does not protect the decision to suspend a physician as a result of the peer review process. Therefore the trial court correctly denied St. Joseph's motion to strike the allegations regarding the suspension of Sanchez's privileges under the anti-SLAPP statute.

Flagging Sanchez's patient files for additional peer review initiates the peer review process and is therefore protected activity. (*Bonni II, supra,* 83 Cal.App.5th at p. 303.) Under the two-prong test, the burden shifted to Sanchez to show a probability of prevailing.

Finally, Sanchez alleged that she was forced to sign a behavioral contract in retaliation for making a report about patient safety to the Department of Public Health. The record does not include a copy of this contract. Sanchez described it as requiring her to direct all further patient safety concerns to St. Joseph Hospital's chief of staff first.

St. Joseph had the burden of establishing that entering into this behavioral contract was protected activity, that is, that it fell under one of the four categories set out in section 425.16, subdivision (e).[5] As evidence to support this aspect of an anti-SLAPP

---

[5] Section 425.16, subdivision (e), provides, "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

8

motion, St. Joseph submitted only excerpts from its by-laws.[6] The by-laws permit St. Joseph to initiate "[a] corrective action investigation" to curb disruptive behavior that threatens "Medical Staff or Hospital operations and safe patient care," but St. Joseph did not present the trial court with any evidence that this was the reason for the behavioral contract in this case.[7]

Sanchez alleged that the behavioral contract arose from her complaint to the Department of Public Health and was intended to stifle her ability to expose substandard patient care at the hospital. St. Joseph presented no evidence of a contrary intention or even of how Sanchez's complaint to the department threatened "Medical Staff or Hospital operations and safe patient care."

St. Joseph argued that both the behavioral contract and Sanchez's suspension were protected activity, the contract because it was part of the peer review process, because it was the "product of negotiations to settle a dispute between the parties," and because it qualifies as other conduct in connection with an issue of public interest (see § 425.16, subd. (e), criterion (4)). The suspension itself qualifies because hospitals have a duty to take action against dangerous physicians, a matter of public concern. So suspending physicians is an act "in furtherance" of a hospital's protected peer review process. (See § 425.16, subd. (e), criterion (4).)

---

[6] St. Joseph moved to augment the record on appeal with several documents, three of which were declarations filed to oppose Sanchez's ex parte application for a temporary restraining order and order to show cause re preliminary injunction at the outset of the case in July 2020. These declarations were not before the court in April 2022 when it ruled on the anti-SLAPP motion, and St. Joseph did not refer to them either in their moving papers or in their reply.

Section 425.16. subdivision (b)(2), provides, "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." These declarations were not included in the affidavits St. Joseph submitted to support its motion, and we do not consider them in our analysis.

[7] We assume without deciding that a "corrective action investigation" is equivalent to peer review. (See Bus. & Prof. Code, §§ 809 et seq.)

St. Joseph criticized Sanchez for failing to include a copy of the behavioral contract as part of her evidence in opposition to the anti-SLAPP motion. St. Joseph presumably had a copy of the contract, which could have been included in the supporting evidence. Since St. Joseph had to show that the contract was protected as part of the initial burden, this omission weighs more against them than against Sanchez.

9

St. Joseph did not present any evidence to support its anti-SLAPP motion other than excerpts from bylaws. There was before the court, therefore, no declaration from someone from St. Joseph with personal knowledge of the circumstances surrounding the contract. That meant there was no evidence that the contract was part of the peer review process. Likewise, there was no evidence of any "negotiations" between Sanchez and anyone from St. Joseph leading to a settlement of a dispute. According to Sanchez, the contract was simply imposed on her. Finally, St. Joseph did not explain how the content of the behavioral contract properly connects with the asserted public interest. "'[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.' [Citations.]" (*FilmOn.com Inc. v. DoubleVerify Inc*. (2019) 7 Cal.5th 133, 150.)

Without the contract before us, we cannot tell what the speech involved entailed. In fact, we cannot even tell whether the words matter at all. Sanchez alleged that the contract was forced upon her to retaliate for complaining to the Department of Public Health and to restrict her ability to make future complaints. It may have had nothing to do with peer review. We simply cannot tell. It was St. Joseph's burden to establish that the contract qualified as protected activity, and they failed to do so.

As to Sanchez's suspension being a matter of public concern, the Supreme Court disposed of that argument in *Bonni*. "[D]isciplining a doctor based on a view that the doctor's skills are deficient is not the same thing as making a public statement to that effect. The latter is, or may be, speech on a matter of public concern. The former is not speech at all. . . . An employer has the constitutional right to express opposition to antiretaliation laws, for example, but the employer has no equivalent right to fire an employee in retaliation for whistleblowing activity." (*Bonni, supra,* 11 Cal.5th at p. 1021.) "Our inquiry here turns instead on whether the Hospitals' conduct advances the Hospitals' '*ability* to speak [or petition] on matters of public concern.' [Citation.] No connection between the Hospitals' choice of which doctors should receive staff privileges

10

and its ability to speak or petition on public issues is apparent." (*Id*. at p. 1022, fn. omitted.)

As the court stated in *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 625 (*Martin*), "We agree with the lower court finding: 'This is an action for retaliation and wrongful termination filed by plaintiff . . . against his former employer . . . and Supervisor . . . .' . . . 'Moreover, if this kind of suit could be considered a SLAPP, then [employers] could discriminate . . . with impunity knowing any subsequent suit for . . . discrimination would be subject to a motion to strike and dismissal.' . . . As the lower court in that case [*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1288] stated, '"I just feel like to rule for the defendant in this case would be to say that section 425.16 provides a safe harbor for discriminatory conduct and I don't think that's what it's intended to do."'"

The same analysis applies here. St. Joseph's physicians can say whatever they like during a peer review meeting without fear of liability for that statement. But section 425.16 does not offer a safe harbor for retaliating against Sanchez. The trial court correctly denied St. Joseph's anti-SLAPP motion as to these two alleged retaliatory acts.

**B.**     **Probability of Prevailing**

Flagging Sanchez's patient files for peer review is the sole instance of protected activity established by St. Joseph. The burden thereupon shifted to Sanchez to present admissible evidence showing her probability of prevailing on this allegation. As this court explained in *Bonni II*, the litigation privilege of Civil Code section 47 protects the initiation of the peer review process, just as it would the initiation of a lawsuit. (*Bonni II, supra,* 83 Cal.App.5th at p. 303.) Peer review is a quasi-judicial process, and,

11

as such, it qualifies for the absolute protection of Civil Code section 47, subdivision (b). (*Id.* at p. 300.) Sanchez has no probability of prevailing on this aspect of her action.[8]

Striking allegations regarding flagging patient files for peer review does not preclude Sanchez from mentioning them in the lawsuit. Flagging the files may be evidence of St. Joseph's motives or relevant to the other claims. As the court stated in *Bonni*, "communicative activities often may supply evidence of illicit animus even if they do not in themselves supply a basis for liability. [Citation.] But if the claims are stricken from the pleadings for lack of merit, [plaintiff] may no longer seek to impose liability on defendants for having engaged in these protected acts." (*Bonni, supra,* 11 Cal.5th at p. 1019.)

## II.        Amendment

Citing *Nguyen, supra,* the trial court gave Sanchez permission to amend the first amended complaint "to establish a causal link between her complaints and the flagging of her files for additional peer review." We agree with St. Joseph that this was error.

*Nguyen* concerned a plaintiff whose appointment as the Westchester superintendent of public schools was rescinded after the defendant accused her of being a Communist. (*Nguyen, supra,* 171 Cal.App.4th at p. 864.) One cause of action was for defamation. (*Ibid.*) The defendant filed an anti-SLAPP motion, which the trial court denied. (*Id.* at p. 865.) Based on the evidence presented in the motion, the trial court found that the plaintiff was a public figure and that she had presented sufficient evidence in her opposition to the motion to support the defendant's "actual malice," that is, knowledge of falsity or reckless disregard of truth or falsity (see *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-280), which a public figure must plead and prove in

---

[8]        For that reason, whether Health and Safety Code section 1278.5, subdivisions (c) or (d) provides a rebuttable presumption that the action was retaliatory is irrelevant.

12

order to recover for defamation. The trial court permitted the plaintiff to amend her complaint to plead actual malice. (*Nguyen, supra,* 171 Cal.App.4th at p. 866.)

"Actual malice" in this context is a legal conclusion. The *Nguyen* plaintiff had, in the evidence submitted to oppose the anti-SLAPP motion, stated the facts necessary to support this conclusion and therefore to show her probability of prevailing. Adding an allegation that defendant acted with actual malice to the complaint simply made explicit what the evidence already showed. As this court pointed out, "false statements uttered with actual malice serve no public interest, and where the strike opponent has demonstrated the requisite probability of success in showing such malice, as here, her complaint falls outside the purpose of the anti-SLAPP statute – indeed, it is not a SLAPP suit at all. . . . Consequently, the trial court did not err in permitting plaintiff to amend her complaint to plead actual malice in conformity with the proof presented at the hearing on the strike motion." (*Nguyen, supra,* 171 Cal.App.4th at p. 873.)

In this case, however, Sanchez did *not* present proof of a causal link between making her complaints and flagging her files at the hearing on St. Joseph's strike motion.[9] To do so, she would have to plead additional facts, thereby sparking another round of motion practice.

As numerous courts have held, this is precisely why plaintiffs may not amend their complaints to plead around a failure of proof. (See *Martin, supra,* 198 Cal.App.4th at pp. 626-627 and cases cited.) As the court stated in *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073, "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the [first prong] showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on

---

[9] The trial court explicitly found that "[Sanchez] has not made a prima facie showing that she has a probability of prevailing on the additional peer review allegation."

13

the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend."

Prior decisions have wisely prevented this. And, in any event, as discussed above, Sanchez cannot prevail on a retaliation claim based on peer review because of the litigation privilege.

## DISPOSITION

The order of April 12, 2022, is reversed in part. The trial court is instructed to enter an order striking allegations referring to flagging plaintiff's patient files for peer review as a retaliatory act from the first amended complaint. In all other respects, the order is affirmed. Appellants' request for judicial notice is denied. The parties are to bear their own costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


SANCHEZ, J.

14