Filed 8/23/21

**CERTIFIED FOR PARTIAL PUBLICATION***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CLAUDIA FINATO, | B303978 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC126362) |
| v. | |
| KEITH A. FINK & ASSOCIATES et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Harry Jay Ford III, Judge.  Affirmed in part and reversed in part.

Law Offices of Olaf J. Muller and Olaf J. Muller for Defendants and Appellants.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication, with the exception of parts D and E of the Discussion.

Law Offices of Larry R. Glazer and Nicolette Glazer for Plaintiff and Respondent.

_____

This is the second appeal in this action between plaintiff and respondent Claudia Finato and defendants and appellants Keith A. Fink & Associates (KAF&A), Keith A. Fink, and Sarah Hernandez, plaintiff's former attorneys. In the first appeal, we affirmed the trial court's striking of two of plaintiff's causes of action under Code of Civil Procedure section 425.16,[1] the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. We further modified the trial court's order to strike specific additional allegations within three other causes of action which we deemed arose from protected conduct and on which plaintiff had not shown a probability of prevailing.

On remand, defendants moved for judgment on the pleadings on plaintiff's remaining allegations, claiming they were time-barred. The trial court granted the motion with leave to amend to clarify when certain events took place. Plaintiff filed a first amended complaint (FAC). Defendants then filed a second anti-SLAPP motion arguing that eight paragraphs in the FAC repleaded allegations analogous to allegations struck in the first appeal.

The trial court denied the motion. It found that defendants had failed to establish that the FAC's allegations arose from protected conduct. To the extent the allegations were precluded by the first appeal, the court concluded that defendants' challenge should have been brought as an ordinary motion to

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

strike material not in conformity with an earlier court order, not as an anti-SLAPP motion.

The trial court further ruled that seven of the eight paragraphs targeted by defendants did not implicate protected conduct under the reasoning of the first appeal. The court found that one of the eight paragraphs did run afoul of the first appeal but, again, should have been challenged through an ordinary motion to strike.

In the published portion of this opinion, we conclude that a second anti-SLAPP motion is a proper procedural vehicle to challenge an amended pleading renewing allegations previously stricken under section 425.16. Accordingly, the trial court should have granted defendants' motion as to the one paragraph precluded by our first appeal.

In the unpublished portion, we affirm the trial court's determination that the other seven paragraphs challenged by defendants do not arise from protected conduct.

## PROCEDURAL BACKGROUND

### 1. *Original complaint*[2]

On September 6, 2016, plaintiff filed a complaint against defendants alleging the following:

In March 2011, plaintiff retained KAF&A, a law firm, to represent her in litigation against her employer, LABite.com (LABite). Fink and Hernandez were attorneys employed at KAF&A. Plaintiff entered into a contingency fee agreement entitling KAF&A to 50 percent of any amounts recovered. The

---

[2] We take judicial notice of plaintiff's original complaint. (Evid. Code, §§ 452, subd. (d), 459.)

agreement further provided that if plaintiff terminated KAF&A, the firm could recover the "reasonable value" of its services and any unreimbursed costs from any subsequent recovery by plaintiff.

In September 2011, KAF&A filed a class action complaint on behalf of plaintiff against LABite alleging wrongful termination and violations of the Labor and Business and Professions Codes. After several other cases against LABite were consolidated with or related to plaintiff's case, the trial court certified a class in May 2013 with plaintiff as one of three class representatives, and KAF&A as class cocounsel with another firm.

Plaintiff's relationship with KAF&A deteriorated at this point and the firm stopped communicating with her or informing her of developments in the case. In February 2014, without consulting with plaintiff or any class members, KAF&A and its class cocounsel reached a settlement with LABite. Plaintiff objected to the terms of the settlement, and in April 2014, terminated KAF&A and retained new counsel.

KAF&A and class cocounsel then filed an amended class complaint naming a new class representative, Tim Baker, who was willing to sign the settlement agreement. Plaintiff formally opted out of the class settlement to preserve her individual claims. The trial court approved the class settlement in October 2014, awarding $420,000 in attorney fees, half of which went to KAF&A.

On July 1, 2015, plaintiff and LABite entered into a written agreement settling plaintiff's individual claims. Before LABite disbursed any funds, KAF&A "asserted a lien for attorney fees" in the litigation between plaintiff and LABite. Plaintiff filed a

4

motion to enforce her settlement agreement with LABite, which the trial court denied. Plaintiff alleged that as of the filing of her complaint against defendants, LABite had yet to disburse any settlement proceeds to her.

Plaintiff asserted causes of action for malpractice, breach of fiduciary duty, breach of contract, restitution, intentional interference with contractual relations, intentional interference with prospective economic advantage, and declaratory relief. Plaintiff alleged numerous acts she claimed violated defendants' duties to her, including negotiating and executing the class settlement without her consent, abandoning plaintiff's case and substituting Baker as class representative, and asserting a lien to which defendants were not entitled, thus undermining and invalidating plaintiff's settlement agreement with LABite.

## 2. *First special motion to strike*

Defendants filed a demurrer and a special motion to strike under section 425.16. They argued that all of the conduct plaintiff alleged in support of her causes of action took place before or in connection with judicial proceedings and therefore was protected under section 425.16. They further argued that plaintiff could not show a probability of success on those causes of action. Plaintiff filed an opposition.

The trial court denied the special motion to strike as to the causes of action for malpractice, breach of fiduciary duty, breach of contract, restitution, and declaratory relief, concluding that protected conduct was not the gravamen of those causes of action. It granted the motion as to the two intentional interference causes of action, finding they were "based entirely on the assertion of an attorney's lien," which was "a filing with a judicial body regarding an issue before it," and therefore protected under

5

section 425.16.  The trial court concluded that plaintiff had not met her burden to show a probability of success on the intentional interference claims.

The trial court sustained the demurrer to the restitution count but otherwise overruled the demurrer.

### 3.    *Finato I*

Defendants appealed the trial court's order denying in part their special motion to strike, and plaintiff cross-appealed.  In an unpublished decision, we affirmed the order with modifications.  (*Finato v. Fink* (Oct. 2, 2018, B281357) [nonpub. opn.] (*Finato I*).)[3]

Our opinion engaged in the two well-established steps of anti-SLAPP analysis:  " 'First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Finato I*, *supra,* B281357, quoting *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

_____

[3] "An unpublished opinion may be cited or relied on:  [¶] (1)  When the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel . . . ."  (Cal. Rules of Court, rule 8.1115(b)(1).)  As we discuss *post*, *Finato I* is relevant here under the doctrine of law of the case, and we cite and rely on it solely under that principle.

### a.     Plaintiff's cross-appeal

We began with plaintiff's cross-appeal, holding that the trial court properly struck the two intentional interference claims.  On the first step of anti-SLAPP analysis, plaintiff "d[id] not dispute the trial court's conclusion that filing a notice of lien constitutes protected activity under section 425.16 . . . ." (*Finato I*, *supra*, B281357.)[4]  Further, the complaint "clearly establishe[d] that defendants' filing of the notice of lien was the act allegedly disrupting plaintiff's contractual or prospective economic relations with LABite."  (*Finato I*, *supra*, B281357.)

Moving to the second step of anti-SLAPP analysis, we agreed with the trial court that plaintiff failed to demonstrate the merit of the intentional interference claims.  Lacking was any evidence to support the pleaded allegations that LABite refused to disburse the settlement proceeds as a result of defendants' notice of lien.

Also lacking was evidence that defendants had "wrongfully asserted a lien for '50% of the gross value' " of plaintiff's settlement with LABite.  Plaintiff herself submitted no evidence regarding the notice of lien, and defendants' evidence showed they asserted the lien " 'pursuant to the parties['] written contract to pay attorneys' fees' without specifying a percentage or amount."  (*Finato I*, *supra*, B281357.)  Given the lack of evidence, "we [could not] infer an intent to interfere or that actual interference occurred."  (*Ibid.*)

---

[4] Because in *Finato I* we interpreted plaintiff's opening brief to concede the trial court's conclusion that filing a notice of lien was protected under section 425.16, we did not address whether that conclusion was correct.

7

We rejected plaintiff's arguments that section 425.16 was unconstitutional because it was vague, overbroad, and gave preference to attorney speech over her right to petition the courts. We also rejected the argument defendants' speech was commercial and thus entitled to less protection.

### b.    Defendants' appeal

We then addressed defendants' appeal, in which they contended that the causes of action the trial court declined to strike also targeted protected conduct. We agreed in part.

We cited case law for the proposition " 'that actions based on an attorney's breach of professional and ethical duties owed to a client are not SLAPP suits, even though protected litigation activity features prominently in the factual background.' " (*Finato I*, *supra*, B281357, quoting *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.) Thus, " 'garden variety' claims for attorney malpractice or breach of fiduciary duty are not subject to a special motion to strike under section 425.16." (*Finato I*, citing *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1539.) We limited that rule, however, "to claims 'brought by former clients against their former attorneys based on the attorneys' acts on behalf of those clients'; in contrast, claims by former clients against former attorneys 'based upon statements or conduct solely on behalf of *different* clients,' or 'nonclients' causes of action against attorneys,' are subject to section 425.16." (*Finato I*, quoting *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 158.)

Applying these principles, we drew "a distinction between plaintiff's allegations concerning defendants' acts in representing her, either as a client or a class member, and defendants' lien-related conduct, which took place after plaintiff had terminated

8

defendants' services and opted out of the class they represented. Plaintiff's allegations unrelated to the lien—namely, that defendants settled the class claims without her consent, abandoned her case, recruited a class representative with adverse interests, and filed an amended class complaint removing her as named representative—are based on defendants' acts on behalf of plaintiff or the class of which she was a part. Thus, as claims by a former client arising from the attorneys' acts on her behalf, they are not subject to section 425.16." (*Finato I, supra*, B281357.)

In contrast, "[p]laintiff's allegations that defendants acted wrongfully by asserting their lien and maintaining entitlement to a share of [plaintiff's] settlement proceeds . . . do not address conduct by defendants while they were acting on behalf of plaintiff or the class. Defendants asserted the lien on their own behalf, not as attorneys representing clients but as a business entity seeking payment for its services." (*Finato I, supra*, B281357.) Thus, although plaintiff was defendants' former client, defendants' conduct in seeking a share of plaintiff's settlement was not exempt from the protections of section 425.16.

In an effort to distance her allegations regarding fee collection from the concededly protected conduct of filing the notice of lien, plaintiff "attempt[ed] to recharacterize defendants' allegedly wrongful conduct as 'claiming entitlement' to 50 percent of the settlement or 's[eeking] more in fees than what they were entitled to receive.' " (*Finato I, supra*, B281357.) We rejected this argument: "[T]he complaint is clear that the targeted action is the filing of the notice of lien, not some abstract claim of entitlement." (*Ibid.*) Similarly, we concluded the allegation that defendants breached their fiduciary obligation " 'to place

9

Plaintiff's interests above Defendants' interest in collecting fees' " referred to their lien-related activities "because the complaint contains no other allegations of fee collection apart from those activities." (*Ibid.*) Further, "[p]laintiff's allegations of damages stemming from the lost benefit of the confidential settlement agreement and the fees and expenses incurred attempting to enforce that agreement also implicate protected activity, because plaintiff alleges those damages flowed directly from defendants' assertion of their lien and their opposition to plaintiff's motion to enforce the settlement." (*Ibid.*)

Having held that defendants satisfied the first anti-SLAPP step as to the lien-related allegations, we concluded at the second step that plaintiff had not shown a probability of prevailing on those allegations. As to the malpractice cause of action, plaintiff "cite[d] no authority for the proposition that assertion of a lien, even an allegedly invalid one, is a breach of duty." (*Finato I, supra*, B281357.) Even assuming, as plaintiff alleged, that seeking " 'unconscionable, duplicative, unearned, and excessive fees' " was a breach of duty, she had provided no evidence that defendants had done so—as we had discussed when addressing the intentional interference claims, "the notice of lien filed by defendants did not state an amount or percentage, but simply invoked the parties' fee agreement." (*Ibid.*) "It would appear defendants sought nothing more than what the contract and the law permit." (*Ibid.*)

Applying similar reasoning, we held that plaintiff had not demonstrated a probability of success as to her allegations that defendants had breached either a fiduciary duty or the contingency fee contract by asserting their lien and seeking to collect fees from plaintiff. Again, plaintiff had failed to identify a

10

duty or contractual provision defendants breached by asserting a lien or seeking fees, nor had she shown that defendants had sought anything more than what they were entitled to under the contingency fee agreement.

We declined to strike plaintiff's cause of action for declaratory relief. Although that cause of action sought to invalidate the lien and defendants' entitlement to fees, it did not "seek to impose liability based on defendants' assertion of their lien," and therefore was not subject to the protections of section 425.16. (*Finato I*, *supra*, B281357.)

In the disposition, we affirmed the striking of the two causes of action for intentional interference. We then identified allegations in seven paragraphs under the causes of action for malpractice, breach of fiduciary duty, and breach of contract that were based on defendants' protected lien-related conduct, and modified the trial court's order to strike those allegations as well. Our instructions were specific, identifying the paragraphs by number and quoting or citing the exact language to be struck.[5] As modified, we affirmed the trial court's order.

_____

[5] The disposition stated, in relevant part, "The trial court's order is modified to grant the special motion to strike the following claims and allegations in plaintiff's complaint, in addition to the fifth and sixth causes of action already struck in the trial court's order: (1) in paragraph 55, that 'all Defendants sought to collect 50% of the gross amount of a confidential settlement reached between Plaintiff and her former employer after Plaintiff, having been abandoned by the Firm, was compelled to opt out of her own case in order to pursue and preserve her individual claims'; (2) in paragraph 57, subparagraphs F and G in their entirety; (3) in paragraph 72, that had defendants exercised proper skill and care and comported with the rules of professional conduct, 'Plaintiff would

11

### 4.    *Proceedings on remand*

On remand, defendants filed a motion for judgment on the pleadings as to the causes of action for malpractice, breach of fiduciary duty, and breach of contract, arguing that *Finato I* struck the only allegations that were not time-barred and "severed the causal nexus between [plaintiff's] alleged harm suffered in 2016 and Defendants' alleged acts of misconduct from the years 2011–2014."

The trial court granted the motion with leave to amend "to resolve the uncertainty and arguable inconsistencies of plaintiff's allegations regarding when the acts occurred, when they were

---

not have lost the benefit of the confidential settlement agreement reached with the assistance of the state court and in reliance on the explicit language of the judgment; and Plaintiff would not have incurred legal fees and expenses defending and seeking to enforce the confidential settlement agreement reached on 1 July 2015'; (4) in paragraph 76, that defendants breached their fiduciary obligation 'to place Plaintiff's interests above Defendants' interest in collecting fees'; (5) in paragraph 77, that plaintiff suffered damages including 'the value of her bargain as reflected in the 1 July 2015 confidential settlement agreement increased for prejudgment interest' and 'the additional legal fees and expenses defending and seeking to enforce the confidential settlement agreement reached on 1 July 2015'; (6) in paragraph 89, that defendants breached the contract of representation 'by asserting a contractual non-possessory lien when no such valid lien had been created through Plaintiff's informed consent' and 'by seeking recovery of 50% of the gross proceeds of Plaintiff's post-termination settlement'; (7) in paragraph 91, that plaintiff suffered damages including 'the lost benefit of [her] 1 July 2015 bargain with her prior employer.' " (*Finato I*, *supra*, B281357.)

discovered, when Plaintiff suffered injury or damages from each act, and when Plaintiff and Defendant[s'] relationship officially ended." The trial court granted the motion without leave to amend as to the breach of contract action against individual defendants Fink and Hernandez, finding they were not parties to the contingency fee agreement.

Plaintiff filed the FAC on July 8, 2019, asserting causes of action for malpractice and breach of fiduciary duty against all defendants, breach of contract against KAF&A, and declaratory relief. Among other changes, the FAC omitted the specific language struck in *Finato I*. Further, paragraph 91 of the FAC stated that "[t]his complaint does not seek to impose any liability on the basis of the filing of the . . . notice of lien . . . ."

Defendants then filed a second anti-SLAPP motion directed specifically at paragraphs 97, 98, 116, 118, 125, 129, 139, and 142 of the FAC. Defendants argued those paragraphs renewed allegations struck in *Finato I*. We describe the relevant language in those paragraphs in our Discussion, *post*.

The trial court denied the motion. The court found that defendants "make no effort to establish that Plaintiff's causes of action 'arise from' . . . protected conduct," particularly in light of the disclaimer in paragraph 91 of the FAC that plaintiff no longer sought to impose liability based on the filing of the notice of lien. Instead, defendants "simply argue the challenged [paragraphs] contain allegations that were stricken" in *Finato I*. The court ruled that argument "may be grounds for an ordinary motion to strike under . . . [section] 436, which authorizes a court to strike out 'all or any part of any pleading not drawn or filed in conformity with . . . an order of the court,' " but "does not . . .

13

satisfy the showing required to specially strike the subject allegations under . . . [section] 425.16."

The trial court also rejected defendants' contention that the challenged paragraphs, with the exception of paragraph 139, ran afoul of *Finato I*. The court found that the allegations in paragraphs 97, 98, and 129 were in the original complaint and left untouched by our disposition in *Finato I*, and therefore could not be stricken now. The court further found that paragraphs 116, 118, 125, and 142 alleged unprotected conduct under the reasoning of *Finato I* because they did not impose liability based on defendants' assertion of their lien, or contained language similar to unstricken language in the original complaint.

The trial court agreed with defendants that paragraph 139, which alleged KAF&A violated "the contract of representation" by "assert[ing] . . . an entitlement to 50% or some other unspecified 'portion'" of plaintiff's settlement, was precluded by *Finato I*. Again, however, the trial court ruled that defendants' remedy was through an ordinary motion to strike rather than an anti-SLAPP motion.

Defendants timely appealed.

## DISCUSSION

Defendants argue their anti-SLAPP motion was the proper procedural vehicle to challenge the renewed allegations in the FAC, and all of the challenged allegations arose from protected conduct. We agree with defendants that a new anti-SLAPP motion is an appropriate method to attack an amended complaint asserting allegations struck by an earlier anti-SLAPP motion. We disagree, however, that all of the challenged paragraphs contain allegations subject to strike under section 425.16. Like

14

the trial court, we conclude that only paragraph 139 runs afoul of *Finato I*.

## A. Governing Law and Standard of Review

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.) "The statute authorizes defendants to file a special motion to strike in order to expedite the early dismissal of unmeritorious claims." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 416.)

The anti-SLAPP statute provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Acts protected under the statute include, inter alia, "any written or oral statement or writing made before a . . . judicial proceeding" and "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e)(1), (2).)

As discussed, anti-SLAPP analysis involves two steps: "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Baral, supra*, 1 Cal.5th at p. 384.) An

15

anti-SLAPP motion need not be directed at a cause of action in its entirety, but "may be used to attack parts of a count as pleaded." (*Id.* at p. 393.) We review the grant or denial of an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

## B. The Allegations in Paragraph 139 Are Precluded by *Finato I*

Paragraph 139 of the FAC, which falls under the cause of action for breach of contract, alleges, "In violation of the contract of representation and settled California law [KAF&A] asserted and continue[s] to assert an entitlement to 50% or some other unspecified 'portion' of the gross amount of the non-existent[6] 1 July 2015 confidential settlement despite the following facts: (1) [KAF&A] had abandoned Plaintiff in order to pursue and represent interests adverse to Plaintiff; (2) [KAF&A] impaired Plaintiff's ability to recover on her individual claims; and (3) [KAF&A] had already received their portion of the $420,000.00 (legal fees) and $23,872 (court costs) for work allegedly completed on Plaintiff's behalf until 14 May 2014."

In *Finato I*, we ordered similar language struck from paragraph 89 of the original complaint, which alleged that "Defendants breached the contract of representation . . . by seeking recovery of 50% of the gross proceeds of Plaintiff's post-termination settlement." We concluded this allegation implicated protected conduct because "the complaint makes clear that the

---

**6** This paragraph refers to plaintiff's settlement with LABite as "non-existent" because, as alleged elsewhere in the FAC, the trial court refused to enforce the settlement after KAF&A asserted their lien.

16

only way in which defendants sought fees was by filing the notice of lien and opposing plaintiff's attempts to enforce the settlement, both of which plaintiff does not dispute are protected under section 425.16." (*Finato I*, *supra*, B281357.) We further concluded the allegation was without merit because "nothing in the fee agreement prohibit[ed] defendants from collecting fees, filing a notice of lien, or asserting their right to payment in opposition to plaintiff's attempt to enforce a settlement that excluded them." (*Ibid.*)

*Finato I* is law of the case. Under that doctrine, " ' "the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." ' [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505.) " 'This is true even if the court that issued the opinion becomes convinced in a subsequent consideration that the former opinion is erroneous. [Citation.]' [Citation.]" (*Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 837.) " 'The doctrine is one of procedure that prevents parties from seeking reconsideration of an issue already decided absent some significant change in circumstances.' [Citation.]" (*Sargon Enterprises, Inc.*, at p. 1505.) Thus, to the extent the allegations in paragraph 139 are analogous to those struck in *Finato I*, they are precluded by that earlier opinion.

Plaintiff argues the allegations in paragraph 139 do not implicate protected conduct because the "FAC contains not a single allegation identifying or seeking to impose liability on [KAF&A] for their 'assertion of a lien' or any act of debt collection." She notes the disclaimer in paragraph 91 of the FAC

17

stating, "This complaint does not seek to impose any liability on the basis of the filing of the 8 September 2015 notice of lien . . . by Defendants."

Plaintiff mischaracterizes the FAC, which unquestionably contains allegations imposing liability based on debt collection. Paragraph 99, under the cause of action for malpractice, alleges defendants "fail[ed] to provide competent legal representation" by, inter alia, "s[eeking] and continu[ing] to seek to collect from Plaintiff fees [and] a liquidated debt or alleged debt . . . despite the fact that Plaintiff has received no recovery from LaBite or any other party in the underlying litigation." Similarly, paragraph 140, under the cause of action for breach of contract, states that "Defendants breached the contract of representation . . . by seeking to collect a liquidated debt." Defendants' anti-SLAPP motion did not target these paragraphs, and therefore we express no opinion whether they implicate protected conduct. They belie, however, plaintiff's contention that the FAC does not allege liability based on fee or debt collection.

Further, despite the disclaimer in paragraph 91, the FAC, like the original complaint, does not refer to any actions by defendants to collect fees *apart* from the assertion of their lien.

We need not decide, however, whether these amended allegations implicate protected conduct. Assuming arguendo they do not, this would not save paragraph 139, because "a plaintiff whose complaint is stricken by a successful anti-SLAPP motion cannot try again with an amended complaint." (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 676.) "Once the trial court has determined the speech at issue is constitutionally protected, it may not grant leave to amend to omit facts to take the claim out

18

of the protection of section 425.16." (*Mobile Medical Services, etc. v. Rajaram* (2015) 241 Cal.App.4th 164, 171.) Allowing an amendment "once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading." (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 (*Simmons*).) Thus, "[t]here is no such thing as granting an anti-SLAPP motion with leave to amend." (*Dickinson*, at p. 676.) Our striking of the allegations arising from fee collection in *Finato I* barred plaintiff from repleading the allegations in an amended complaint.

Plaintiff raises additional arguments seemingly directed at *Finato I*'s conclusion that defendants' fee collection efforts constituted protected conduct, including that defendants have taken no steps to enforce their lien, and the dispute is private and has no connection to a public issue. Also, as she did in *Finato I*, plaintiff raises constitutional arguments challenging the anti-SLAPP statute, including that defendants' speech is "commercial" and therefore cannot override her own right to petition the courts.

*Finato I* rejected plaintiff's constitutional challenges to the anti-SLAPP regime and held all of her allegations regarding liens and defendants' attempts to collect fees from her were subject to strike under section 425.16. Again, that is law of the case, and those issues cannot be relitigated here.

19

Similarly, we reject plaintiff's arguments that she has shown a probability of success on the merits of her allegations in paragraph 139. Plaintiff argues, as she did in *Finato I*, that attorneys who abandon clients or commit malpractice cannot recover fees. As we held in *Finato I*, assuming arguendo defendants had no right to recover fees, plaintiff has failed to identify any authority that merely seeking those fees itself constitutes a breach of professional, fiduciary, or contractual duty. Absent a showing that defendants breached the contract of representation by seeking fees, plaintiff has not shown a probability of success on the allegations in paragraph 139.

## C. A Second Anti-SLAPP Motion Was a Proper Method to Challenge Paragraph 139

The trial court ruled that defendants' challenge to paragraph 139 should have been brought as an ordinary motion to strike rather than as a second anti-SLAPP motion. The court wrote that to satisfy the first step of anti-SLAPP analysis, "Defendants were required to (1) identify the specific causes of action they believed arose from protected conduct; (2) identify the purported protected conduct; (3) identify the applicable subsection of CCP §425.16(e) pursuant to which that conduct was protected; (4) establish by a preponderance of the evidence that the conduct was in fact protected and (5) that the cause of action arose from that protected conduct." The court found defendants had not engaged in this analysis, and instead "simply argue[d] the challenged [paragraphs] contain allegations that were stricken" in *Finato I*. The court deemed this inadequate given the disclaimer in paragraph 91 of the FAC that plaintiff no longer sought to impose liability based on the filing of the notice of lien: "In light of Plaintiff's express denial at [paragraph] 91, it was

20

essential for Defendants clearly [to] demonstrate that specific causes of action 'arose' from protected conduct."

In other words, the trial court concluded that the disclaimer in paragraph 91 undercut defendants' argument that the paragraphs targeted by their anti-SLAPP motion contained allegations arising from the filing of defendants' notice of lien. Because defendants identified no other conduct alleged in the FAC that was protected under section 425.16, they could not prevail on their second anti-SLAPP motion. They could, however, bring an ordinary motion to strike on the basis that paragraph 139 contained allegations struck in *Finato I*, and therefore was "not drawn or filed in conformity with . . . an order of the court." (§ 436, subd. (b).)

Defendants dispute the trial court's conclusion that their motion lacked the required analysis. We need not resolve that question, however, because assuming arguendo defendants did nothing more than establish the allegations in paragraph 139 were materially identical to allegations struck in *Finato I*, that was sufficient to prevail on their anti-SLAPP motion as to that paragraph.

We concluded in *Finato I* that plaintiff's allegations regarding defendants' efforts to collect fees from her arose from protected conduct, namely the filing of the notice of lien. Under *Simmons*, *Mobile Medical Services, etc.*, and *Dickinson*, once we made that determination, plaintiff could not separate her fee collection allegations from the protected conduct—our ruling inextricably linked them. In effect, the protected conduct alleged in the original complaint remained in the FAC regardless of plaintiff's efforts to omit it. The disclaimer in paragraph 91 of the FAC was nothing more than "artful pleading" (*Simmons*,

21

*supra*, 92 Cal.App.4th at p. 1073), and the trial court should have disregarded it.  Viewed in this light, paragraph 139 of the FAC was equally subject to an anti-SLAPP motion as the analogous allegations in the original complaint because, under the law of the case as set forth in *Finato I*, all of those allegations arose from protected conduct and plaintiff failed to show a probability of success as to any claim based on that conduct.[7]

Further, requiring defendants to bring an ordinary motion to strike would deprive them of two key advantages of a special motion to strike under section 425.16:  attorney fees if they prevailed, and a right to an immediate appeal if the trial court ruled against them.  (§ 425.16, subds. (c), (i).)  *Simmons* explained that permitting a plaintiff to amend a complaint to evade an anti-SLAPP challenge would create a "procedural quagmire" through which "the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent.  [Citation.]  Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources.  [Citation.]  This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits." (*Simmons*, *supra*, 92 Cal.App.4th at p. 1074.)

Without the attorney fee and appeal provisions of section 425.16, defendants, despite having succeeded in striking

---

[7] We note the FAC does not allege defendants took any further action subsequent to the filing of the original complaint to collect fees from plaintiff.  We therefore have no cause to opine on whether or how *Finato I* would apply to such allegations had they been made.

the allegations once, potentially would be left to bear the cost of striking the allegations a second time, and if the trial court ruled against them, might not be able to contest the ruling until final judgment. This also "would totally frustrate" the "quick and inexpensive method" contemplated under section 425.16. (*Simmons*, *supra*, 92 Cal.App.4th at p. 1074.)

We therefore conclude a second anti-SLAPP motion relying on the law of the case as articulated in *Finato I* was an appropriate procedural vehicle to challenge paragraph 139, and the trial court should have granted the motion as to that paragraph.

## D. Under *Finato I*, the Remaining Challenged Paragraphs Do Not Arise From Protected Conduct

Defendants contend paragraphs 116, 118, 125, and 142 of the FAC arise from protected conduct, because all allege liability based on their notice of lien invalidating plaintiff's settlement of her individual claims with LABite and depriving her of the value of her individual claims. They further argue that paragraphs 97, 98, and 129 arise from protected conduct because they "explicitly target [defendants'] efforts to collect attorney fees owed by [plaintiff]. Under the law of the case as articulated in *Finato I*, we disagree.

### 1. The allegations in paragraph 116 do not arise from protected conduct

Paragraph 116 alleges, "After the invalidation of the confidential settlement agreement[,] Plaintiff has suffered additional harm and incur[r]ed costs to litigate and pursue her prejudiced claims without access to the entire litigation file. Defendants' withholding of the file severely undermines the

23

ability of Plaintiff to proceed to trial or respond to a motion for summary judgment, if her motion for default judgment is denied."

Defendants argue this paragraph "alleges that [defendants] caused 'the invalidation of the confidential settlement agreement . . . .'" This is inaccurate. The paragraph does not refer to what caused the invalidation of the agreement, nor does it premise liability upon it. Rather, it premises liability on defendants' withholding of plaintiff's litigation file, an act unrelated to the filing of their notice of lien. As we held in *Finato I*, "[t]he allegations regarding defendants' failure to release plaintiff's file do not address any actions before a judicial body or that otherwise implicate defendants' right to petition, and thus are unprotected under section 425.16." (*Finato I*, *supra*, B281357.) We are bound by that holding here.

### 2. *The allegations in paragraphs 118, 125, and 142 do not arise from protected conduct*

Paragraphs 118, 125, and 142 all refer to plaintiff, as a result of defendants' misconduct and breaches, losing the value of her individual claims and having to incur additional costs to recover on those claims. Paragraph 118 alleges that, but for defendants' malpractice, "Plaintiff would not have lost the right to pursue her claim for wrongful termination and a representative claim under PAGA," "would not have been impaired in her ability to recover the full value of her claims from her former employer," "and would not have had to incur and continue to incur additional legal fees to correct, remedy and mitigate the harm caused by Defendants' negligent and/or deliberate actions to the detriment to their former client in the underlying LaBite.com litigation which remains pending."

24

Paragraph 125 alleges damages including "(1) the value of the lost claims for wrongful termination and the representative claim under PAGA; (2) the loss of the [Business & Professions Code section 17200] claim and her Labor Code claims; [and] (3) the cost of the additional litigation in order to recover on her original claims." ~(3 CT 571)~

Paragraph 142 alleges damages including "additional costs of litigation, the additional cost of duplicating and developing Plaintiff's claims due to withholding of the litigation file by Defendants, and the loss of asserted but wrongfully released claims."

Defendants argue that the allegations that plaintiff lost the value of certain claims and incurred costs pursuing them all stem from the loss of her settlement with LABite following defendants' assertion of their lien. They analogize the allegations to allegations struck in *Finato I*, including that plaintiff "lost the benefit of the confidential settlement agreement," "incurred legal fees and expenses defending and seeking to enforce the confidential settlement agreement," and "lost" the "benefit of [her] 1 July 2015 bargain with her prior employer." (*Finato I*, *supra*, B281357.)

We note initially that the allegations quoted above in paragraphs 118, 125, and 142, are identical, or nearly so, to allegations we declined to strike in *Finato I* from paragraphs 72, 77, and 91 of the original complaint. That alone is reason to reject defendants' challenge here. In hopes of forestalling additional litigation on the matter, however, we will explain more specifically why we left those allegations untouched in *Finato I*.

The original complaint certainly alleged that defendants' filing of the notice of lien deprived plaintiff of her settlement with

25

LABite, but it *separately* alleged that plaintiff released or lost the ability to pursue claims when defendants replaced her as class representative, filed a new class complaint, and ultimately settled the class action. At paragraph 57, subparagraph E of the original complaint, plaintiff alleged "[KAF&A] filed the global amended [class action] complaint in order to relegate Plaintiff to the status of absent class member; to release [her] wrongful termination cause of action; and to impede her ability to recover damages outside of the Tim Baker [class action] settlement." At paragraph 68, the original complaint alleged that defendants "made the conscious decision to settle the claims of Plaintiff and the class so as to frustrate and compromise Plaintiff's individual claims . . . ." The FAC contains identical allegations at paragraphs 99, subparagraph F, and 110.

As we held in *Finato I*, allegations "that defendants settled the class claims without her consent, abandoned her case, recruited a class representative with adverse interests, and filed an amended class complaint removing her as named representative[,] are based on defendants' acts on behalf of plaintiff or the class of which she was a part. Thus, as claims by a former client arising from the attorneys' acts on her behalf, they are not subject to section 425.16." (*Finato I*, *supra*, B281357.) Under this rationale, plaintiff's alleged loss of or impairment in her ability to pursue her claims as a result of the class action settlement, and her expenditure of funds on additional litigation to try to recover on those claims, do not arise from protected activity.

We acknowledge that both the original complaint at paragraph 70 and the FAC at paragraph 114 allege that "Plaintiff did not suffer an actual injury and/or appreciable harm as a

26

consequence of [KAF&A's] negligence until 17 July 2016 when the trial judge refused to enforce the court-brokered written settlement agreement [between plaintiff and LABite] and ruled, contrary to its prior position, that because Plaintiff had opted out of the *Tim Baker* settlement agreement she is not 'a party' to 'the consolidated actions pending' before' " the superior court." We do not interpret this allegation solely to implicate the filing of the notice of lien. Rather, plaintiff alleges that because she opted out of the class settlement, the trial court ruled she was no longer party to *any* actions against LABite, and therefore could not enforce a settlement of her individual claims either. This alleged reason to deny enforcement was independent of the filing of the notice of lien. The cause of plaintiff's alleged injuries, therefore, was not only the filing of the notice of lien, but defendants' alleged malpractice and other breaches that led to her opting out of the class settlement. As alleged by plaintiff, that injury did not manifest until the trial court declined to enforce her settlement with LABite.

Defendants dispute plaintiff's interpretation of the trial court's order denying enforcement of her individual settlement, and argue that the class action settlement had no impact on plaintiff's individual claims. They further argue that plaintiff has not in fact incurred any additional litigation costs apart from contesting defendants' lien. Those arguments go to the merits of plaintiff's allegations, not to whether they constitute protected activity. They are irrelevant to the first step of anti-SLAPP analysis, and we express no opinion on them.

27

### 3. The allegations in paragraphs 97, 98, and 129 do not arise from protected conduct

Defendants identify specific allegations within paragraphs 97, 98, and 129 of the FAC they contend implicate protected conduct. Paragraph 97 alleges that defendants "abandoned Plaintiff and her case in order to obtain a lucrative award of attorney fees." Paragraph 98 alleges defendants breached their duties "to place Plaintiff's interests above [KAF&A's] in maximizing fees." Paragraph 129 alleges KAF&A "simply abandoned Plaintiff and her case to pursue its share of the payment of $420,000.00 in guaranteed attorney fees."

In *Finato I*, we struck an allegation from paragraph 55 of the original complaint that "all Defendants sought to collect 50% of the gross amount of a confidential settlement reached between Plaintiff and her former employer." We also struck an allegation from paragraph 76 that defendants had breached their fiduciary obligations by failing "to place Plaintiff's interests above Defendants' interest in collecting fees." Defendants contend the challenged allegations in paragraphs 97, 98, and 129 of the FAC similarly refer to their efforts to collect fees from plaintiff, and are indistinguishable from the stricken language.

The language defendants identify in paragraphs 97, 98 and 129 of the FAC appeared verbatim in paragraphs 55, 56, and 81 of the original complaint, and *Finato I* did not strike that language. We are bound by that holding. Again, however, in hopes of avoiding future disputes, we will explain our reasoning more specifically.

The original complaint referred to defendants' seeking attorney fees in two separate contexts. One was defendants' efforts to collect fees from plaintiff by asserting a lien against her

28

individual settlement with LABite. The other was defendants' efforts to obtain attorney fees by settling the class action, which they allegedly did by removing plaintiff as class representative and substituting in a new class representative willing to sign the settlement. Defendants' efforts to settle the class action were unrelated to their filing of the notice of lien, and therefore, under *Finato I*, did not implicate protected conduct.

The allegations defendants identify in paragraphs 97 and 129 of the FAC, as well as the analogous language in paragraphs 55 and 81 of the original complaint, refer to defendants' efforts to obtain fees from the class settlement, not their efforts to collect fees from plaintiff. Paragraph 97 alleges that defendants' "abandoned Plaintiff" so they could "obtain a lucrative award of attorney fees." The allegation that defendants "abandoned Plaintiff" refers to their ignoring her objections to the class settlement and replacing her as class representative. Paragraph 129 is even more explicit, alleging that defendants "abandoned Plaintiff" in order to obtain "$420,000.00 in guaranteed attorney fees," a clear reference to the $420,000 allegedly awarded to class counsel.

The allegation in paragraph 98 of the FAC and paragraph 56 of the original complaint that defendants breached their duties "to place Plaintiff's interests above [KAF&A's] in maximizing fees," could refer to defendants' efforts to obtain fees through class settlement, their efforts to collect fees from plaintiff, or both. In *Finato I*, we declined to strike allegations that "could encompass" unprotected conduct, even if they might also refer to protected conduct. (*Finato I*, *supra*, B281357.) Because the allegation that defendants "maximiz[ed] fees" could

29

encompass unprotected conduct, we left it untouched in *Finato I*, and that reasoning applies equally to the FAC.

Defendants argue there is no principled distinction between the stricken allegation in paragraph 76 of the original complaint that defendants had failed "to place Plaintiff's interests above Defendants' interest in *collecting* fees," and the FAC's allegation at paragraph 98 that defendants failed "to place Plaintiff's interests above [KAF&A's] in *maximizing* fees." (Italics added.) The distinction arises in paragraph 55 of the original complaint, which alleged that "all Defendants sought to collect 50% of the gross amount of a confidential settlement reached between Plaintiff and her former employer." "Collect" as used in paragraph 55 referred specifically to defendants' efforts to obtain additional fees from plaintiff by imposing a lien on her settlement proceeds. In *Finato I*, we applied the same meaning to "collecting" in paragraph 76, and thus interpreted it also to refer to defendants' lien-related activities. In other words, paragraph 55 of the original complaint narrowed the scope of the word "collecting" in paragraph 76 to apply only to protected conduct, whereas nothing narrowed the scope of the term "maximizing" in paragraph 56 of the original complaint or paragraph 98 of the FAC.

## E.  The Trial Court May Determine Entitlement To And Amount of Attorney Fees on Appeal

Defendants request that we award them attorney fees and costs or issue an order permitting defendants to move for such fees and costs in the trial court. A prevailing defendant on a special motion to strike is entitled to recover attorney fees and costs incurred in the trial court and on appeal. (§ 425.16, subd. (c); *Huntingdon Life Sciences, Inc. v. Stop Huntingdon*

*Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267 (*Huntingdon*).

Because defendants have obtained only a partial reversal of the trial court's order, we exercise our discretion to deny their request for costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).) We express no opinion as to defendants' entitlement to attorney fees on appeal, which defendants may seek through an appropriate motion in the trial court. (*Huntingdon*, *supra*, 129 Cal.App.4th at p. 1267 [" 'Although this court has the power to fix attorney fees on appeal, the better practice is to have the trial court determine such fees.' "].) The trial court shall "consider whether under the circumstances of this case the defendants are entitled to fees and, if so, the amount." (*Ibid.*)

## DISPOSITION

The order denying defendants' special motion to strike is reversed as to paragraph 139 of the first amended complaint, and the trial court is directed to grant the motion as to that paragraph. The order otherwise is affirmed. The parties shall bear their own costs on appeal.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.