Filed 5/2/25  Meritage Homes of California v. HBT of Winters Highlands CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| MERITAGE HOMES OF CALIFORNIA, INC., | C099898 |
| Plaintiff and Respondent, | (Super. Ct. No. CV20231612) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| HBT OF WINTERS HIGHLANDS, LLC, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 14, 2025, be modified as follows:

1.  On page 13, at the end of footnote 8, add the following sentence:

To the extent Meritage contends that its oral argument in the trial court preserved for appeal its argument on the litigation privilege, we disagree.  (See *Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th

1

109, 118-119 [raising an issue for the first time at oral argument in the trial court "in a case involving numerous documents," is "insufficient to preserve the issue" for appeal]; cf. *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 172, fn. 17 [litigants "preserved [an] issue for appellate review, if only barely," where—in addition to a comment on that issue during oral argument in the trial court—they argued the issue in a request for judicial notice made in connection with a responsive pleading].)

This modification does not change the judgment.  The petition for rehearing is denied.


FOR THE COURT:


_____/s/_____
EARL, P. J.


_____/s/_____
BOULWARE EURIE, J.


_____/s/_____
FEINBERG, J.

Filed 4/14/25  Meritage Homes of California v. HBT of Winters Highlands CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| MERITAGE HOMES OF CALIFORNIA, INC., | C099898 |
| Plaintiff and Respondent, | (Super. Ct. No. CV20231612) |
| v. | |
| HBT OF WINTERS HIGHLANDS, LLC, | |
| Defendant and Appellant. | |

This appeal concerns a motion to strike claims from a civil complaint pursuant to Code of Civil Procedure[1] section 425.16, widely known as the anti-SLAPP statute.  The developer of a residential project in the City of Winters (the City) made sewer and storm drain improvements before contracting to sell multiple plots in the project to a home builder.  Later, a document that amended the parties' contract contained language

_____

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

regarding the developer's entitlement to be reimbursed for costs associated with those sewer and storm drain improvements. When a dispute arose about the meaning of that reimbursement language, the developer wrote a letter to the City demanding its help. The City later exercised its authority to withhold building permits unless the builder complied with the reimbursement language. The builder, Meritage Homes of California, Inc. (Meritage), sued the developer, asserting two causes of action: breach of contract and breach of the implied covenant of good faith and fair dealing.

The developer, HBT of Winters Highlands, LLC (HBT), filed an anti-SLAPP motion, contending that multiple discrete claims in Meritage's cause of action for breach of the implied covenant of good faith and fair dealing arose from activity protected by the anti-SLAPP law: HBT's communications to the City urging it to act or not act.

Litigation of an anti-SLAPP motion involves a two-step process. First, the moving defendant bears the burden of establishing that the challenged claims in a civil complaint arise from protected activity the defendant engaged in. If the moving defendant carries that burden, the second step requires the plaintiff (who opposes the anti-SLAPP motion) to show the challenged claims have at least minimal merit. A trial court should strike each claim for which a plaintiff cannot make the necessary showing at the second step. (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

Here, the trial court granted part of HBT's anti-SLAPP motion, striking some of the claims in Meritage's complaint. On appeal, HBT contends the trial court erred by not also striking Meritage's allegation that HBT breached the implied covenant of good faith and fair dealing by "claiming that Meritage owes HBT $2,153,880.76 in reimbursements." HBT contends this claim, like the others the trial court struck, is based on protected activity. We agree.

As for the second step of the anti-SLAPP analysis, we also agree with HBT that Meritage cannot show this claim has minimal merit. We reach this conclusion because

2

we decline to consider arguments Meritage raises for the first time on appeal. Accordingly, we will affirm in part and reverse in part the trial court's order.

BACKGROUND

HBT is the developer of a planned residential community (the project) within the City's boundaries. In the years leading up to the instant dispute, HBT and the City agreed that HBT was required to make sewer and storm drain improvements (improvements) in connection with the project. In October 2020, HBT sold numerous lots within the project to Meritage by a contract that was later amended multiple times, including in an August 2021 writing, a section which asserts: "Effect on Other Agreements. Nothing in this Assignment is intended to, or does, affect the status or enforceability of any other agreement entered into between [HBT] and City. [Meritage] acknowledges and agr[]ees that [HBT] has installed certain public improvements, including a sewer pump station, sewer force main and storm drain improvements, at its sole costs and expense, which improvements benefit the Assigned Property as well as other properties, and that [HBT] is entitled to be reimbursed by such benefited properties for their proportionate shares of such costs, as determined by the City Engineer." (Boldface omitted.) We will hereinafter refer to this section of the August 2021 writing as "the reimbursement agreement."

In 2022, the City agreed with HBT that it would collect the proportionate reimbursement funds from landowners (including Meritage) and pass them through to HBT.

In February 2023, the parties' difference of opinion regarding the meaning and scope of the reimbursement agreement materialized when counsel for HBT wrote a letter to counsel for the City (1) asserting that Meritage was "disclaiming [its] obligations" under the reimbursement agreement and (2) "demand[ing] that the City . . . use best

3

efforts to collect Meritage's allocated portion of the cost" of the improvements.[2] HBT noted in the letter that it assumed such efforts by the City would include denying Meritage any further building permits.

In June 2023, the City issued a notice of default to Meritage, citing in part Meritage's representations to HBT and the City that it had no intention of paying the reimbursement costs contemplated by the reimbursement agreement. The City explained it would withhold issuance of any building permits or certificates of occupancy to which Meritage would have otherwise been entitled unless Meritage cured the default by (1) remitting to the City Meritage's proportionate share of the total costs of the improvements for residential units for which Meritage had already received building permits and (2) affirming that it would pay its proportionate share of the total costs of the improvements for future residential units that it built. Following this notice of default, the City refused to issue further building permits or certificates of occupancy to Meritage unless it paid $2,153,880.76 to HBT.

In August 2023, Meritage sued HBT, asserting two causes of action—breach of contract and breach of the implied covenant of good faith and fair dealing. Paragraph 17 of the complaint states in relevant part: "Citing the Reimbursement Agreement, HBT demanded that Meritage pay $2,153,880.76 for HBT's work . . . . HBT also demanded that and/or urged/encouraged/convinced the City to take action to try and force Meritage to pay such amounts, culminating in the City sending Meritage a letter pursuant to which the City claims that Meritage is in default of the" August 2021 writing.

Incorporating paragraph 17, the complaint later alleged that HBT breached the implied covenant of good faith and fair dealing by engaging in at least seven discrete acts, which are numbered: (1) intentionally misrepresenting the terms of the written

---

[2] In the trial court, Meritage conceded the reimbursement agreement is "inartful and ambiguous."

4

contract between Meritage and HBT and the terms of the August 2021 writing to the City; (2) entering into the reimbursement agreement in the full knowledge that its terms were contrary to the written contract between Meritage and HBT; (3) demanding, urging, or causing the City to issue the notice of default; (4) failing to cure the City's misunderstanding "that Meritage is a reimbursor, when in fact Meritage is not a reimbursor"; "(5) *claiming that Meritage owes HBT $2,153,880.76 in reimbursements*"; (6) refusing Meritage's tender and request for defense, indemnity, and to be held harmless; and (7) claiming an interpretation of the August 2021 writing that is inconsistent with the terms and conditions of the contract between Meritage and HBT as well as the contemporaneous communications of Meritage and HBT to the City attorney who drafted the provision in question. (Italics added.)

HBT filed an anti-SLAPP motion asking the trial court to strike claims 1 through 5 and 7 of Meritage's cause of action for breach of the implied covenant of good faith and fair dealing, arguing that these claims arose from activity protected by the anti-SLAPP law: HBT's communications to the City urging it to act or not act based on Meritage's failure to provide reimbursement. Regarding the second step of anti-SLAPP analysis, HBT argued the "litigation privilege" barred Meritage from being able to show those claims had any merit. In support of its motion, HBT provided a declaration of the president of its parent corporation, who represented that "[a]t no time did HBT petition anyone other than the City about this matter."

In its opposition, Meritage argued that HBT's motion failed at the first step of the anti-SLAPP analysis because it improperly grouped Meritage's claims together, even though some of the claims were "facially outside" the anti-SLAPP statute. Regarding the second step, Meritage argued its claims had factual merit, but offered no response to HBT's argument the claims were barred by the litigation privilege.

In an October 2023 order, the trial court granted in part HBT's anti-SLAPP motion, ruling at the first step that HBT demonstrated claims 1, 2, 3, and 7 were based on

protected activities, and, at the second step, Meritage failed to establish that the litigation privilege did not apply. Accordingly, the court struck from the complaint claims 1 through 3 and 7, and language in paragraph 17 of the complaint quoted above ("HBT also demanded that and/or urged/encouraged/convinced the City to take action . . . .").

HBT timely appealed in November 2023, solely as to the trial court's ruling related to claim 5. Their opening brief was filed in April 2024, and this case became fully briefed on November 20, 2024.

## DISCUSSION

Claim 5 of Meritage's complaint states that HBT breached the implied covenant of good faith and fair dealing by "claiming that Meritage owes HBT $2,153,880.76 in reimbursements." HBT contends that this claim is based on protected activity and that the trial court erred by failing to strike it along with the other claims. We agree.

## I

### *Legal Background*

"The anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)' " (*Bonni*, *supra*, 11 Cal.5th at pp. 1008-1009.)

"The anti-SLAPP statute identifies four categories of protected activity. (§ 425.16, subd. (e)(1)-(4).) . . . Section 425.16, subdivision (e)(2) protects 'any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.' " (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

6

"Litigation of an anti-SLAPP motion involves a two-step process.  First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' " (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)  A claim arises from protected activity if the "alleged action[] suppl[ies] a necessary element" of the claim.  (*Id.* at p. 1016.)  "Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.]  If the plaintiff cannot make this showing, the court will strike the claim." (*Id.* at p. 1009.)

At the first step, courts should " 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.]  The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)  And "when a plaintiff has pleaded . . . a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not," "courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected . . . ." (*Id.* at p. 1010.)[3]

*Bonni* also explained that *Baral v. Schnitt* (2016) 1 Cal.5th 376 stands for the proposition that—whether or not an anti-SLAPP movant seeks to strike an "entire cause of action" or "merely parts of it"—courts should "take[] a claim-by-claim approach to the anti-SLAPP analysis, rather than attempting to evaluate a cause of action as a whole." (*Bonni*, *supra*, 11 Cal.5th at pp. 1010-1011; *id.* at pp. 1011-1012 [disapproving a "gravamen approach" that seeks to discern the " 'essence' of a cause of action that

---

[3]  Such a cause of action has "sometimes [been] loosely referred to as a ' "mixed cause of action." ' " (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

encompasses multiple claims"—an "almost metaphysical" endeavor; while recognizing some courts that use the "gravamen test" label nevertheless engage in the proper inquiry].)

Substantively, the court in *Bonni* noted that under the anti-SLAPP statute " 'a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' " (*Bonni*, *supra*, 11 Cal.5th at p. 1014, quoting *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.)

We review the trial court's ruling de novo. (*Bonni*, *supra*, 11 Cal.5th at p. 1009.) Without resolving evidentiary conflicts, we must determine whether Meritage's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 396.) In making this determination, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) We accept Meritage's evidentiary submissions as true "and consider only whether any contrary evidence from [HBT] establishes its entitlement to prevail as a matter of law." (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1067.)

II

*First-step Analysis*

HBT argues the trial court erred by ruling that claim 5 is not based on protected activity, because while the claim does not expressly identify the listener to whom HBT made its assertion that Meritage owed it over $2 million when considered with the other allegations in the complaint and the evidence presented in the parties' pleadings, it is clear HBT made this assertion to the City. Meritage contends that claim 5 is not based on protected activity because (1) none of the authority cited in HBT's opening brief holds

8

that allegations like claim 5 are subject to the anti-SLAPP statute, and (2) it arises out of a contract dispute.[4]  We agree with HBT.

To establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must demonstrate that the defendant engaged in conduct that frustrated the plaintiff's right to receive the benefits of the parties' agreement.  (*Ojjeh v. Brown* (2019) 43 Cal.App.5th 1027, 1037.)

Here, paragraph 17 of the complaint alleges:  "Citing the Reimbursement Agreement, HBT demanded that Meritage pay $2,153,880.76 for HBT's work . . . .  HBT also demanded that and/or urged/encouraged/convinced the City to take action to try and force Meritage to pay such amounts, culminating in the City sending Meritage a letter pursuant to which the City claims that Meritage is in default of the" August 2021 writing.  In claim 5, Meritage incorporates those allegations in paragraph 17 and contends HBT "breached the implied covenant of good faith and fair dealing . . . by" "(5) claiming that Meritage owes HBT $2,153,880.76 in reimbursements."  Given the context of paragraph 17,[5] it is clear that claim 5 concerns HBT's *communication to the City* that Meritage owed it $2,153,880.76 in reimbursements.  The declaration HBT presented in support if its anti-SLAPP motion bolsters this conclusion, as it indicates that HBT communicated with no one other than the City about the parties' dispute regarding the reimbursement

---

[4]  Meritage does not dispute that HBT's communications to the City were "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  (Cf. *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 372-373 & fn. 4 [reasoning that a matter is "under consideration" within the meaning of § 425.16, subd. (e)(2) if given " 'attentive thought' " by a city government, even in the absence of official or formal proceedings].)

[5]  Compare *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1252-1254 (anti-SLAPP case in which our Supreme Court emphasized that " '[l]anguage . . . cannot be interpreted apart from context' [citation], and what a particular statement or act is 'about' often cannot be discerned from words alone").

agreement. Meritage points to nothing in the record that suggests that claim 5 concerns HBT's communications to anyone other than the City.

Accordingly, HBT's communication to the City, in and of itself, is a necessary element of claim 5. It is not merely evidence of a different act for which liability is asserted. Claim 5 arises from protected activity. (*Bonni*, *supra*, 11 Cal.5th at pp. 1014, 1016.)

Meritage's arguments on this issue are unpersuasive. It cites no authority for its proposition that, to obtain anti-SLAPP relief, a party must demonstrate that case law has previously identified "similar" protected activity.[6] And contract disputes are not immune from the anti-SLAPP statute. (See *Bonni*, *supra*, 11 Cal.5th at p. 1025 ["A breach of contract claim can arise from protected activity if the action allegedly breaching the contract is itself protected"]; *Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 597, fn. 11 [our Supreme Court has "rejected the blanket rule . . . that the anti-SLAPP statute 'categorically excludes any particular type of action [e.g., breach of contract claims] from its operation' "].)

Accordingly, HBT has carried its first-step burden of establishing that claim 5 arises from protected activity it engaged in.

III

*Second-step Analysis*

If Meritage cannot show that claim 5 has at least minimal merit, the claim must be stricken. (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

---

[6] Compare *Beck v. Hamblen County* (6th Cir. 2020) 969 F.3d 592, 599-600, where the court held that, when suing government officials for money damages in connection with the alleged violation of a federal constitutional right, a plaintiff must demonstrate that the challenged official conduct violated a "clearly established" legal rule by presenting " 'a body of relevant case law' addressing similar facts," such that the officials had clear notice of their specific legal duty.

10

HBT contends (1) the litigation privilege prohibits use of HBT's statements to the City regarding the reimbursement agreement and (2) Meritage's underlying theory of the meaning of the August 2021 writing is incorrect. Meritage argues (1) the litigation privilege "usually does not apply to breach of contract claims" and "communications interpreting" contracts that are the bases of such claims and (2) claim 5 has merit because the reimbursement agreement is contrary to other agreements the parties made. Because we decline to consider Meritage's forfeited argument regarding the litigation privilege, Meritage cannot show that claim 5 has minimal merit.

A. *The Litigation Privilege*

Found in Civil Code section 47, subdivision (b)(2), the litigation privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. In the anti-SLAPP context, the litigation privilege presents a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing. Any doubt as to whether the privilege applies is resolved in favor of applying it and the privilege extends to publications made outside the courtroom. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 785-786.) The litigation privilege promotes effective judicial proceedings by encouraging open channels of communication and the presentation of evidence without the external threat of liability and by encouraging attorneys to zealously protect their clients' interests. (*Id.* at p. 788.)

B. *Analysis*

In its anti-SLAPP motion, HBT argued that claim 5 was based on communications with the City that were made in anticipation of litigation, including a formal Government

11

Claims Act notice.[7]  (See *Bonni*, *supra*, 11 Cal.5th at p. 1024 [" ' "[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16" ' "].)  In its second-step analysis, the trial court ruled Meritage failed to establish that the litigation privilege does not apply to claims 1 through 3 and 7. Meritage failed in that regard because it was *silent* on the issue in its opposition to the anti-SLAPP motion.

The speedy resolution of litigation implicating protected activity is a key purpose of the anti-SLAPP statute.  (See *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 639 [the anti-SLAPP statute "is intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest"]; *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073-1074 [the anti-SLAPP statute is a "mechanism through which complaints that arise from the exercise of free speech rights 'can be evaluated at an early stage of the litigation process' and resolved expeditiously"; courts should avoid rulings that might "frustrate the Legislature's objective of providing" this "quick and inexpensive method"].) Consideration of Meritage's arguments regarding the litigation privilege, which are raised for the first time on appeal, would frustrate both that key purpose of the anti-SLAPP statute and broader principles of judicial economy.  (See *Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44-45 [declining to consider arguments raised for the first time on appeal by a party opposing an anti-SLAPP motion]; *In re M.H.* (2016) 1 Cal.App.5th

---

[7]  Under the Government Claims Act (Gov. Code, § 810 et seq.), a plaintiff generally must present a public entity with a timely written claim for damages before suing the public entity.  (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 651-652.)

699, 713-714 ["Considering an issue for the first time on appeal is often unfair to the trial court, unjust to the opposing party, and contrary to judicial economy because it encourages the embedding of reversible error through silence in the trial court"].) Meritage thereby forfeited any appellate argument on the litigation privilege.[8]  And we decline to consider those forfeited arguments now.

IV

*Meritage's Request for Dismissal or Stay of HBT's Appeal*

We reject Meritage's requests for dismissal or stay of the instant matter.  A different panel of this court previously denied Meritage's request to dismiss the matter and the request to stay the appeal appears in the respondent's brief, which is not in conformance with the California Rules of Court and appellate practice.

A.    *Additional Background*

In an April 2024 motion, Meritage argued for dismissal of this appeal (1) because HBT previously agreed to binding arbitration of disputes between the parties, thereby waiving its right to seek any remedies in court, and (2) because the appeal was moot "given that the subject matter of the appeal [was] pending in arbitration."  In that motion, Meritage represented that it first sought arbitration of the parties' dispute after HBT filed notice that it was appealing the trial court's anti-SLAPP order.  A different panel of this court denied Meritage's motion.

In its respondent's brief, Meritage requests that we dismiss or stay the appeal for reasons similar to those presented in its April 2024 motion.  Meritage informs us that an

---

[8]  The parties had the opportunity to brief forfeiture, a rule always implicated when a party raises an argument for the first time in the reviewing court.  (See *People v. Alice* (2007) 41 Cal.4th 668, 679 ["The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of [Government Code] section 68081"].)

13

arbitrator has "already confirmed his jurisdiction over the dispute." Meritage expresses concern that a ruling on the merits of claim 5—specifically, whether there is evidentiary support for it—would intrude on the arbitrator's jurisdiction. In its reply brief, HBT argues that Meritage's request fails to follow the proper procedure under section 1008, which governs reconsideration of previous interim court orders.

B.      *Analysis*

Though "a party may not file a written *motion* to reconsider that has procedural significance if it does not satisfy the requirements of section . . . 1008," nothing prevents a party from "communicating the view to a court that it should reconsider a prior ruling (although any such communication should never be ex parte)." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108.) While a court must rule on a motion, it is not required to rule on a mere suggestion that it reconsider a previous ruling. Any action to reconsider a prior interim order, prompted by a party's suggestion, must be initiated by the court on its own motion. (*Ibid*.) "Then, and only then, would a party be expected to respond to another party's suggestion that the court should reconsider a previous ruling. This procedure provides a reasonable balance between the conflicting goals of limiting repetitive litigation and permitting a court to correct its own erroneous interim orders." (*Id*. at pp. 1108-1109.) Here, given this court's prior order denying Meritage's motion to dismiss the appeal, we decline to consider Meritage's request that we reconsider that ruling.

Further, we decline to grant the request to stay the appeal. In *People v. Zarazua* (2009) 179 Cal.App.4th 1054, 1064, a panel of this court explained that while the appellate rules of court distinguish " 'applications' which do not expressly provide for an opposition time ([Cal. Rules of Court,] rule 8.50), and 'motions,' which do ([*id*.,] rule 8.54)," the appellate rules "do not provide criteria for classifying an undefined request as an application or a motion" (*id*. at p. 1065). The panel reasoned that undefined requests should be treated as motions if they are not "routine" or if they raise "issues of

14

fact that are potentially subject to dispute." (*Ibid*.)  Here, Meritage's request to stay this appeal because of a preexisting agreement to arbitrate between the parties (1) appears to have no corresponding rule of court defining it as an application or motion, (2) is non-routine, and (3) raises issues of fact that are potentially subject to dispute.  Accordingly, Meritage should have filed an independent motion to stay the appeal pursuant to California Rules of Court, rule 8.54.  (Cf. *Neman v. Commercial Capital Bank* (2009) 173 Cal.App.4th 645, 653-654 [citing § 128, subd. (a)(8) for the proposition that appellate courts have the power to stay proceedings in an appeal].)  Therefore, the request to stay the appeal is denied.

DISPOSITION

The trial court's order granting in part HBT's anti-SLAPP motion against Meritage is affirmed in part and reversed in part.  The court shall vacate its prior order and issue a new order:  (1) granting the anti-SLAPP motion as to claims 1 through 3, 5, and 7 of the cause of action for breach of the implied covenant of good faith and fair dealing; and (2) striking the language in paragraph 17 of the complaint identified in HBT's notice of motion, as the trial court did in its original order.  HBT is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


/s/
BOULWARE EURIE, J.

We concur:


/s/
EARL, P. J.


/s/
FEINBERG, J.

15